[Civ. No. 42560. First Dist., Div. Three. Apr. 10, 1978.]

AMERICAN SMELTING & REFINING COMPANY,
Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
ROBERT RAEL, Respondents.

616

## Counsel

Hanna, Brophy, MacLean, McAleer & Jensen and John W. Moore for Petitioner.

Airola & Ringgold and Kathryn E. Ringgold for Respondents.

## OPINION

**ANELLO, J.*—**This case is before us pursuant to our issuance of a writ of review to consider the finding of the Workers' Compensation Appeals Board that American Smelting & Refining Co. committed serious and wilful misconduct within the meaning of Labor Code section 4553[1] so as to result in the injury of applicant, Robert Rael. The award in favor of applicant increased the amount of compensation otherwise recoverable by the injured employee in accordance with the provisions of section 4553. The sole issue presented in the petition before us and in the hearings before the Workers' Compensation Appeals Board is whether the employee was injured by reason of the serious and wilful misconduct of petitioner.

On July 17, 1974, respondent was injured when his left index finger came into contact with a movable part of an "alligator shears" machine he was operating in the course of his employment. Alligator shears is a large stationary machine which is used to cut large pieces of metal into smaller pieces, which are then fed into another machine called a "bricker." The machine is self-operating; that is, the "jaws" open and close automatically at a rate of 15-20 times per minute. This is considered to be a moderate speed for self-operating machines. The machine operator's job is to feed the metal into the jaws.

As a result of respondent's injury, his finger was completely amputated. The employer has recognized liability for the occurrence of the injury as being industrially related and has voluntarily supplied and paid for all medical expenses as well as making disability payments.

Prior to the night of the injury, respondent had never operated the alligator shears. He was instructed how to use the machine on the night

---

*Assigned by the Chairperson of the Judicial Council.

[1]"The amount of compensation otherwise recoverable shall be increased one-half where the employee is injured by reason of the serious and willful misconduct of any of the following:

"(a) The employer, or his managing representative.

"(b) If the employer is a partnership, on the part of one of the partners or a managing representative or general superintendent thereof.

"(c) If the employer is a corporation, on the part of an executive, managing officer, or general superintendent thereof.

"But such increase of award shall in no event exceed ten thousand dollars ($10,000); together with costs and expenses incident to procurement of such award, not to exceed two hundred fifty dollars ($250)."

of his injury by Mr. Stover, his foreman. Mr. Stover watched respondent operate the shears for about 10 to 15 minutes and then returned a few minutes later to make sure that respondent was not having any difficulties. The accident occurred after respondent had operated the machine for approximately 30 minutes.

At the Workers' Compensation Appeals Board hearing, Mr. Wahl, plant safety supervisor, testified that petitioner is a recycling plant for nonferrous metals. He explained that the alligator shears was used to cut up large pieces of metal of diverse shapes and sizes, including copper coil, large radiators, and tin ingots. He also testified that in comparison with other machines at the plant, the alligator shears is a very simple machine from both a mechanical and operational standpoint. The shears had been in operation at the plant for approximately 50 years; respondent's accident was the first involving operation of the shears that Mr. Wahl had knowledge of during the 30 years of his employment with petitioner. Prior to the accident, Mr. Wahl did not believe the machine to be dangerous if operated properly.

Mr. Wahl further testified that prior to the accident, neither the State Department of Industrial Safety nor any other government agency had recommended the installation of a guard on the machine.

Subsequent to the accident, the Occupational Health and Safety Commission (hereinafter OSHA) required petitioner to install a guard on the shears so that metal could be slipped under the guard with a barrier between the operator's hands and the shears. The guard remained on the machine only one week before it was removed with OSHA approval. Mr. Wahl explained: "Well, the material being cut, the material being cut would flip up and cause a hazard, another hazard from the metal being cut, because the metal being cut would break up and also cause the second hazard of the metal flipping up and catching the finger on the guard; also bent the guard on several instances." Due to the nature of petitioner's work, OSHA standards exempted petitioner from the requirement of having a guard on the shears because of the guard's unworkability.

Respondent, on the other hand, testified that he had only observed the shears in operation once prior to the time he was assigned to operate it. He stated that he felt they could be made safer and that it should not

have been used to cut wire coils of the size given to him to cut on the night of the accident.

The administrative law judge found that permitting the use of the shears for repetitive cutting of wire coils of the size given to respondent "demonstrated at the very least a wanton and reckless disregard of the possible damaging consequences." The administrative law judge further stated that "[t]he danger is so obvious that the fact that no one had been previously injured doing that type of cutting on the alligator shear was given less weight than if the danger had been less apparent." An increase in compensation for the injury was thus awarded to respondent pursuant to Labor Code section 4553.

The Workers' Compensation Appeals Board, upon petitioner's request for reconsideration of the findings and award, upheld the decision of the administrative law judge and cited *Dowden* v. *Industrial Acc. Com.* (1963) 223 Cal.App.2d 124 [35 Cal.Rptr. 541], for the rule that circumstantial evidence can justify a finding of knowledge even though the employer testifies to the contrary. However, the board noted its awareness that it is almost impossible to guard the alligator shears in such a manner as to substantially improve its safety without impairing its effective use for large pieces of metal.

■ "Wilful misconduct" pursuant to section 4553 is more than negligence, however gross. The type of conduct necessary to invoke the penalty under section 4553 is that of a " ' "*quasi* criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its possible consequences". . . . To constitute "wilful misconduct" there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury.' " (*Mercer-Fraser Co.* v. *Industrial Acc. Com.* (1953) 40 Cal.2d 102, 117 [251 P.2d 955]; *Rogers Materials Co.* v. *Ind. Acc. Com.* (1965) 63 Cal.2d 717, 722 [48 Cal.Rptr. 129, 408 P.2d 737].)

■ Serious and wilful misconduct can result from a finding of one of three alternatives: (a) a deliberate act for the purpose of injuring another; (b) an intentional act with knowledge that serious injury is a probable result; or (c) an intentional act with a positive and reckless disregard of its possible consequences. (*Grason Elec. Co.* v. *Industrial*

*Acc. Com.* (1965) 238 Cal.App.2d 46, 48 [47 Cal.Rptr. 439]; *Dowden* v. *Industrial Acc. Com.* (1963) 223 Cal.App.2d 124, 130 [35 Cal.Rptr. 541].) In discussing the knowledge requirement of section 4553, the Court of Appeal has stated: "An employer must know the probable consequences of his failure to provide more adequate safety devices or a safer place to work. He must have put his mind to the existence of a danger to an employee and have failed to take precautions to avert that danger." (*Abron* v. *Workmen's Comp. Appeals Bd.* (1973) 34 Cal.App.3d 232, 238 [109 Cal.Rptr. 778].)

In *Dowden* v. *Industrial Acc. Com., supra,* 223 Cal.App.2d 124, the Court of Appeal did rely on circumstantial evidence to impute to an employer knowledge of serious danger to an employee and wilful disregard of probable consequences. However, in *Dowden* there was substantial evidence to demonstrate that the employer, despite his testimony to the contrary, was aware of the danger.

The employer in *Dowden* instructed the employee to lift a power line with a wooden board while standing on top of a harvester so that the harvester could pass beneath the power line. The harvester was being pulled by a vehicle driven by the employer, a rancher. Occasionally, he needed to move the harvester across a public road. It was too large to pass beneath the power lines adjacent to the road. When moving the harvester, the employer did not request the utility company to de-energize the lines; rather, he would have one of his employees stand on the harvester and raise a wooden board into the air and lift the power lines to permit clearance. On the day of the accident, the line slipped off the board, touched the metal harvester and electrocuted the employee, resulting in the employee's death. The employer admitted knowledge of high voltage in the power lines. However, he maintained that if done properly, the lifting of the power lines in this manner was not dangerous. He further stated that he had performed this maneuver three times previously and no trouble had occurred. Several employees, former and present, testified that on previous occasions an employee had received a shock, which was made known to the employer. Moreover, the employer had seen an electric flash during a prior movement. As a result of one such incident, the employer had two men lift the line for the return trip. In light of this evidence, it is not surprising that the Court of Appeal held that these prior incidents constituted circumstantial evidence which justified, and even compelled, a finding of awareness of danger in the face of testimony avowing ignorance.

In the case before this court, the petitioner contends that the record lacks any evidence of knowledge imputable to American Smelting & Refining Co. or its representatives which forms a legal basis for the finding of serious and wilful misconduct. Petitioner further alleges that the basis of the finding is the nature of the machine, which could not be made more safe, given its use in petitioner's business.

In reviewing an award of the Workers' Compensation Appeals Board, the Court of Appeal must consider the entire record. The award is only to be upheld if it is based on substantial evidence in the record taken as a whole. (*LeVesque* v. *Workmen's Comp. Appeals Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432]; *Hulbert* v. *Workmen's Comp. Appeals Bd.* (1975) 47 Cal.App.3d 634, 638 [121 Cal.Rptr. 239].)

In the case before this court, the only evidence to support the award in the record is the single statement by respondent, quoted above, that he felt the machine should not have been used to cut the copper coils. In the face of this statement, there is evidence of 50 years' use of the machine to cut a variety of metals, including copper coils of the type being cut by respondent when the accident occurred, without incident. The administrative law judge was apparently of the opinion that the coils were too small to be cut by the shears. However, petitioner's supervisors testified that if the metal was small in size it was put directly into the bricker. The shears were only used to cut larger pieces. The administrative law judge also stated that the repetitive nature of bending and rising to feed metal into the shears for a lengthy period of time constituted a dangerous condition. However, there is no evidence that work on the shears was done in this fashion. Respondent had only been operating the machine for 30 minutes when the accident occurred. In fact, respondent's supervisor testified that the movement of the machine was not fast or slow, but regular. It was not required of the operator to have material under the jaws each time they went up and down. It was the supervisor's opinion, based on the size of the coils that respondent was given to cut, that respondent's hand should never have been closer than 15 inches to the jaws.

While *Dowden, supra,* 223 Cal.App.2d 124, does permit circumstantial evidence to impute knowledge to the employer so as to find his conduct to be a reckless disregard for the safety of an employee, there must be substantial evidence in the record as a whole from which to impute that knowledge. The record in the petition before this court does not support

that finding. In *Dowden,* the employer was cognizant of "near-misses"; in the case at bench, there is no evidence of any mishaps, or "near mishaps" involving the alligator shears. OSHA standards permit use of alligator shears for petitioner's business without a guard, including use for cutting copper coils. There is a further differentiation between the facts of this case and those in *Dowden,* where the employer created the dangerous circumstances with his instructions to the employees. In the present case, the danger involved, if any, in operating the shears is part of the working environment, which environment is permitted by OSHA.

■ Factual determinations, including credibility of the witnesses, is generally within the domain of the administrative law judge in workers' compensation cases. However, when the contradictory and conflicting evidence in the record so discredits the supportive evidence as to render it insubstantial, we are required to reject the findings based thereon. (*Mendoza* v. *Workers' Comp. Appeals Bd.* (1976) 54 Cal.App.3d 820, 823 [127 Cal.Rptr. 173]; *Vela* v. *Workmen's Comp. Appeals Bd.* (1971) 22 Cal.App.3d 513, 519-520 [99 Cal.Rptr. 387].)

We therefore conclude that the decision of the appeals board lacks the support of substantial evidence, and for that reason, it is annulled and the case remanded to the board for proceedings consistent with the views expressed herein.

Scott, Acting P. J., and Feinberg, J., concurred.

A petition for a rehearing was denied May 10, 1978, and the petition of respondent Rael for a hearing by the Supreme Court was denied June 9, 1978.