[Civ. No. 4690. Fifth Dist. July 24, 1979.]

CITY OF CALIFORNIA CITY, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
BOBBY FINKLEA, Respondents.

**COUNSEL**

Wayne K. Lemieux, City Attorney, Helm, Budinger & Lemieux, and Jerome M. Budinger for Petitioner.

Hays, Petersen & Blane, Lyle L. Blane and Richard Elder for Respondents.

**OPINION**

**FRANSON, J.**—Petitioner, City of California City (hereinafter the City) has sought to have a decision of a Workers' Compensation Appeals Board (hereinafter the Board) vacated. The Board denied City's petition for reconsideration of an award of benefits under Labor Code section 4850 to respondent Bobby Finklea (hereinafter respondent). Petitioner contends the award of benefits under section 4850, which provides for a leave of absence in lieu of temporary disability payments,[1] was improper here for the following reasons: (1) respondent was not an employee covered by the section because his duties were primarily administrative rather than active fire fighting; (2) respondent's job was abolished for reasons unrelated to his disability, and it is not legally possible to grant him a leave of absence from a position no longer existent. The City further contends that even if respondent was entitled to benefits under section 4850, it was improper to impose a penalty against the City under Labor Code section 5814 for unreasonable delay in payment of compensation. Although we agree the penalty was improper, we affirm the award of benefits under section 4850.

---

[1]Labor Code section 4850 provides in pertinent part:

"Whenever any [member of one of the specified categories of public employees] . . . is disabled, whether temporarily or permanently, by injury or illness arising out of and in the course of his duties, he shall become entitled, regardless of his period of service with the city or county, to *leave of absence* while so disabled without loss of salary in lieu of temporary disability payments, if any, which would be payable under this chapter, for the period of such disability but not exceeding one year, . . . [This section] shall . . . apply to city firemen, county firemen, and firemen of any fire district who are members of the Public Employees' Retirement System . . . *and excludes such employees* of the . . . fire department whose principal duties are those of a telephone operator, clerk, stenographer, machinist, mechanic, or otherwise and *whose functions do not clearly fall within the scope of active fire fighting and prevention service.* . . ." (Italics added.)

The procedural chronology is as follows. On May 8, 1978, respondent filed with the Board an application for adjudication of claim, alleging he was injured in the course of his employment as director of public safety for the City. The basis for the claim was a lower back injury sustained during his employment. The State Compensation Insurance Fund accepted the case as compensable and provided temporary disability benefits and continuing medical care. However, the City refused to pay respondent his full salary pursuant to Labor Code section 4850. On August 31, 1978, a hearing was held before a workers' compensation judge to determine whether respondent was entitled to a leave of absence and full salary under section 4850.

The following facts were established at the hearing: respondent testified that on the date of injury he was a safety member of the Public Employees' Retirement System and was paying 9 percent of his gross salary to the Public Employees' Retirement System. Respondent's injury occurred on September 22, 1977, while he was at the scene of a fire. He had been called at home in the early morning hours to respond to the fire and wore the formal dress of a fireman which was the normal procedure. While attempting to open a fire hydrant, he sustained a lower back injury. Respondent immediately documented his injury with the City but did not request medical treatment until May 1978, shortly before his job was to be terminated.[2]

Respondent testified that on the date of injury he was in charge of all safety members working for the City including both police service and fire service specialists as well as safety employees who rotated duties. He stated most of his duties were in fact administrative. His employment history with the City was as follows. In July 1974, he was hired as a fire suppression captain; in this capacity he responded to fires and participated in fire suppression. He was promoted to battalion chief and also fought fires in that position. In October or November of 1975, the Department of Public Safety was formed and his job title was changed to fire services commander; he still fought all fires within the City. Respondent held that title until October 1976, at which time he was promoted to acting director of public safety. In that position, he had charge of both the fire and police departments and dispatched both departments. Also, during the time he

---

[2]When respondent's administrative job was terminated on May 15, 1978, he was unable to return to any job entailing heavy work such as fire fighting. He demanded his full salary ($1,650 per month) from the City pursuant to section 4850 but the City did not respond. He received $154 per week from the State Compensation Insurance Fund as disability payments.

served as acting director of public safety, respondent participated in fighting fires and responded to fires just as any other fireman would. Respondent was employed as acting director of public safety until that position was abolished on May 15, 1978.

The facts concerning the abolishment of respondent's job were stipulated to be as follows: On April 18, 1978, due to anticipated financial shortages facing the City for the remainder of the current fiscal year and the likelihood that such shortages would continue into the next fiscal year, and for other management reasons, the city council, pursuant to a recommendation from the city manager, abolished the position of director of public safety effective May 15, 1978. Respondent was given special administrative assignments (preparation of reports) to perform until the effective date of the abolishment of his position.

Based on respondent's testimony and the parties' stipulations, the workers' compensation judge rendered inter alia the following findings:

"It is found the occupation of applicant on September 22, 1977, was that of city fireman.

". . . All the requirements for application of the provisions of Labor Code Section 4850 are present.

". . . This injury caused temporary total disability beginning May 15, 1978, to and including August 31, 1978, and thereafter payable at applicant's full salary pursuant to Labor Code Section 4850 less credit for all payments made at the rate of $154.00 a week.

". . . Further medical treatment to cure or relieve from the effects of the injury herein is required.

". . . It is found that the employer unreasonably refused to pay disability benefits pursuant to the provisions of Labor Code Section 4850 and payments under that section beginning May 15, 1978, and thereafter are increased by ten percent."

The judge awarded respondent his full salary pursuant to Labor Code section 4850 commencing May 15, 1978, the date respondent's former position was effectively abolished. The judge also imposed the statutory penalty for unreasonable delay, and awarded such further medical care and treatment as needed.

The City thereafter filed a petition for reconsideration. On February 2, 1979, the Board issued its opinion and order denying reconsideration. The City filed a petition for writ of review with this court, and on May 7, 1979, we issued a writ of review.

## DISCUSSION

We conclude that the evidence supports the Board's finding that respondent was a "fireman" whose functions fell within the scope of "active fire fighting and prevention service" within the meaning of Labor Code section 4850; moreover, he is entitled to the benefits of that section regardless of the fact that his position of director of public safety has been abolished for reasons unrelated to his disability.

Under Labor Code section 3202, workers' compensation laws are to be liberally construed by the courts with the purpose of extending their benefits to persons injured in the course of their employment. Where provisions of such laws are susceptible of an interpretation beneficial to injured employees or where an ambiguity appears, they must be construed favorably to the employee (see *Kimball* v. *County of Santa Clara* (1972) 24 Cal.App.3d 780, 785 [101 Cal.Rptr. 353] where it was held that a correctional officer with many supervisorial functions came within the scope of "active law enforcement" and was therefore entitled to § 4850 benefits).

Although respondent's duties as director of public safety were not exclusively in the area of fire fighting and prevention, his responsibilities nonetheless qualified him as a fireman within the meaning of section 4850 because he did respond to all structural fires and he actively participated in on-the-scene fire control activities. Furthermore, his administrative duties encompassed fire *prevention,* i.e.—tactical and logistic planning to prevent fires. That the City had merged its fire, police and animal control departments under one director should not permit the City to evade its obligation to give its firemen and policemen the special benefits provided in section 4850. To permit this would thwart the legislative intent to give special benefits to policemen and firemen because their occupations are particularly hazardous and they undertake these hazards on behalf of the public (see *Kimball* v. *County of Santa Clara, supra,* 24 Cal.App.3d at p. 785 quoting from 51 Ops.Cal.Atty.Gen. 32, 34). In short, simply because respondent did not have the title of a fireman or because his duties as director of public safety extended into

several areas unrelated to fire fighting, does not disqualify him from the benefits of section 4850.[3]

Once it is established that respondent was a fireman whose functions come within the scope of active fire fighting and prevention service within the meaning of Labor Code section 4850, then it necessarily follows that he is entitled to the benefits of that section since his medical disability (inability to perform heavy work) was caused by his industrial injury. The fact that respondent was able to continue functioning as director of public safety by doing light administrative work does not mean that he was not disabled as a result of an industrial injury.[4] Although the injury was only a latent disability insofar as being compensable, it continued until it ripened into a legally compensable disability on May 15, 1978, when respondent's employment was terminated by the City. Thus, the prior injury "was not a mere antecedent fact relating to the . . . disability ensuing therefrom; . . . it was the *basis of the right to be compensated for such disability.*" (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 392 [182 P.2d 159], italics added.) Since the industrial injury is the foundation of rights and liabilities under workers' compensation laws (*id.,* at p. 392), it is clear that an employer may not avoid honoring its vested (albeit in this case unmatured) compensation obligations by abolishing the injured employee's position however much it acted in good faith. (Cf. *Boyd* v. *City of Santa Ana* (1971) 6 Cal.3d 393 [99 Cal.Rptr. 38, 491 P.2d 830].)

The City argues that the "leave of absence" language in section 4850 contemplates the continued existence and eventual resumption of the

---

[3]Respondents point out that a fireman need not be responsible for actually physically extinguishing flames in order to qualify under Labor Code section 3212 for another special benefit provided to public employees in law enforcement and fire fighting (a presumption that heart trouble, pneumonia or hernias arose in the course of employment). The phrase "active fire fighting member" within the coverage of section 3212 includes "persons performing tactical and logistic functions as well as those who physically extinguish the flames. The preparation of fire plans and the dispatch of personnel and equipment are integral to the process. The statute does not confine itself to those who physically extinguish the flames; rather it comprehends 'active fire fighting members . . . whose duties require fire fighting.' " (*State Employees' Retirement System* v. *Workmen's Comp. App. Bd.* [73 Cal.Rptr. 172] (1968) 267 Cal.App.2d 611, 615.)

[4]After respondent's injury, if the City had not permitted him to retain his title as director of public safety, while performing only administrative duties, the disability would have been apparent immediately. It is clear that he would have been entitled to benefits under section 4850 in that event. By allowing him to do only the administrative aspects of the job for the months after respondent was injured, the disability was in effect masked.

employment relationship, citing *Collins* v. *County of Los Angeles* (1976) 55 Cal.App.3d 594 [126 Cal.Rptr. 541]. However, *Collins* is distinguishable in that the employee there had voluntarily resigned his employment effective on the same date the benefit period commenced under section 4850. The court held that the unconditional resignation terminated the right to leave of absence benefits. Although in the usual situation the parties contemplate a return of the employee to the job, contrary to the holding in *Collins,* the statute does not require the continued existence and eventual resumption of the employment relationship. For example, in *Boyd* v. *City of Santa Ana, supra,* 6 Cal.3d 393, it was held that a city may not deprive an employee of section 4850 benefits by terminating his employment on grounds of physical fitness where his disability is due to injury or illness arising in the course of his employment. *Boyd* also explains that the payments contemplated by section 4850 are not salary but are workers' compensation benefits (6 Cal.3d at p. 397). Thus, regardless of the job title or other technical description of the position, the fact remains that respondent was injured in the performance of his duties as a fire fighter, and thereafter his employment was unilaterally terminated by his employer. He is entitled to the benefits provided by section 4850.

■ Finally, we hold that the Board erred in imposing a 10 percent penalty against the City for unreasonably refusing to pay the "leave of absence" benefits. Labor Code section 5814 provides in part: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts."

In *Gallamore* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 815, 828 [153 Cal.Rptr. 590, 591 P.2d 1242], it is explained, "[in] penalty cases the board should proceed with a view toward achieving a fair balance between the right of the employee to prompt payment of compensation benefits, and the avoidance of imposition upon the employer or carrier of harsh and unreasonable penalties." Our Supreme Court has indicated what will constitute a sufficient cause for delay in paying benefits: ". . . the only satisfactory excuse for delay in payment of disability benefits, whether prior to or subsequent to an award, is genuine doubt from a medical or *legal* standpoint as to liability for benefits, and . . . the burden is on the employer . . . to present substantial evidence on which a finding

of such doubt may be based." (*Kerley* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223, 230 [93 Cal.Rptr. 192, 481 P.2d 200], italics added.)

In the present case, the City showed that the termination of respondent's employment in May of 1978 was grounded on economic considerations unrelated to Finklea's disability. It also questioned its liability for leave of absence pay to one disabled from a nonexistent position. Thus, it cannot reasonably be said that the City did not entertain a "genuine doubt" as to whether it was legally required to grant respondent section 4850 benefits. The imposition of the penalty was error.

The order of the Board awarding respondent Bobby Finklea a 10 percent penalty pursuant to Labor Code section 5814 is annulled. In all other respects, the Board's order is affirmed.

Brown (G. A.), P. J., and Hopper, J., concurred.