[Civ. No. 46366. First Dist., Div. Four. Mar. 24, 1980.]

BEKINS MOVING & STORAGE COMPANY, Petitioner, v. WORKERS' COMPENSATION APPEALS BOARD and GLEN D. GARNER, Respondents.

676

COUNSEL

Mentz, Finn, Gilbert & Clarke, Nathan A. Gilbert and Bryce C. Anderson for Petitioner.

William B. Donohoe, Tiernan & Smith and Gerald J. Tiernan for Respondents.

OPINION

**CALDECOTT, P. J.**—Petitioner, Bekins Moving & Storage Company, seeks review of the decision, after reconsideration, of the Workers' Compensation Appeals Board, which affirmed the workers' compensation judge's holding that applicant sustained industrial injury to his back and right leg as a result of the serious and wilful misconduct of petitioner and that petitioner unreasonably delayed payment of medical bills. We affirm the decision.

On November 15, 1978, the workers' compensation judge issued an award finding that applicant Glen Garner sustained an industrial injury on October 30, 1976. The judge also found that Bekins had unreasonably delayed payment of benefits and that applicant was injured because of his employer's serious and wilful misconduct. Temporary disability indemnity was also awarded by the judge. Bekins thereafter filed a timely petition for reconsideration. On January 29, 1979, the Workers' Compensation Appeals Board affirmed the judge's findings on the issues of injury, penalty for unreasonable delay in furnishing benefits, and serious and wilful misconduct of the employer.

Applicant Glen D. Garner, employed as a driver/furniture mover by Bekins, testified that on October 30, 1976, he had been assigned to unload a trailer at one of Bekins' warehouses. He did this by carrying the material in the trailer down a walkboard to the sidewalk. Prior to October 30, he had complained several times about the walkboard and had suggested to his supervisors, perhaps two dozen times, that holes be drilled through it so that a pin could be inserted directly into the truck. According to the summary of evidence, applicant described the manner in which he was injured as follows: "He was carrying a box down the ramp. He saw a lady coming along the sidewalk. He stopped so that he wouldn't run into her. His toe knocked the walk board out causing the walk board to slip."

In addition to suggesting pins to his supervisor, Mr. Cloward, applicant recalled mentioning the subject immediately prior to his fall at a safety meeting at the manager's office. "There were OSHA [Occupational Safety and Health Act] inspections with reference to the walk boards. The first was at his request and the second occurred when the OSHA safety inspector called him at home and he suggested that the safety inspector arrive at 6:30 in the morning when the trucks were being loaded. He understood that his supervisor, Mr. Cloward agreed with him that the pin was a good idea. The pins simply weren't installed until after his injury."

Mr. Cloward, operations supervisor for Bekins in Oakland, was qualified as a safety expert. Mr. Cloward had worked in the freight hauling and moving business for 10 years. He had been with Bekins for seven years, the last four of which he worked as a supervisor. Mr. Cloward testified that he was familiar with the equipment including the walkboards used at Bekins in Oakland and that the walkboards "could be utilized in a safe manner."

## I

By stipulation, petitioner made what was referred to as an offer of proof that if one Verdo Earl Bridges were called as a witness he would testify that he was on the Oakland site at the time of this alleged injury; was walking by the side of the building; saw the applicant, Mr. Garner, kick the walkboard and then jump to the ground while he was carrying nothing.

Petitioner contends that the WCAB was bound by the parties' stipulation regarding evidentiary facts showing the applicant's actions on October 30, 1976, did not result in an industrial injury and the applicant, therefore, failed to sustain his burden of proof on that issue. Petitioner appears to be confusing a stipulation as to testimony a witness would give with a stipulation that the facts testified to are, in fact, true. As applicant states, "There merely was a stipulation that, if the witness were called by the defendants, he would testify that this is what he saw. This was never stipulated to as a fact."

Labor Code section 5702 provides that: "The parties to a controversy may stipulate the facts relative thereto in writing and file such stipulation with the appeals board. The appeals board may thereupon make its findings and award based upon such stipulation, *or* may set the matter

down for hearing and take further testimony or make the further investigation necessary to enable it to determine the matter in controversy." (Italics added.)

■ Thus, even where the parties stipulate to certain facts, the board is not necessarily bound and may base its decision on the evidence presented at the hearing. (*Turner Gas Co.* v. *Workmen's Comp. Appeals Bd.* (1975) 47 Cal.App.3d 286, 290 [120 Cal.Rptr. 663].)

In this case, the referee weighed the evidence offered by stipulation against the contradictory testimony and rejected it.

■ Having considered the stipulated evidence, the referee did not abuse his discretion by finding to the contrary that applicant did sustain an industrial injury.

## II

■ Petitioner contends that as a matter of law its delay in paying benefits was reasonable. Labor Code section 5814 provides: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts. Such delay or refusal shall constitute good cause under Section 5803 to rescind, alter or amend the order, decision or award for the purpose of making the increase provided for herein."

■ "The only satisfactory excuse for delay in payment before or after an award is 'genuine doubt from a medical or legal standpoint as to liability for benefits,' and the burden is on the employer or carrier to show substantial evidence of the basis for doubt." (Cal. Workmen's Compensation Practice (Cont.Ed.Bar 1973) p. 517; *Berry* v. *Workmen's Comp. App. Bd.* (1969) 276 Cal.App.2d 381 [81 Cal.Rptr. 65, 34 Cal. Comp.Cases 507].)

Labor Code section 5814 "...clearly contemplates that there must be a reasonable cause for delay in making disability payments. Once delay is shown, a satisfactory explanation must be made by the employer." (*Berry, supra*, at p. 383. See also *Kerley* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223, 227 [93 Cal.Rptr. 192, 481 P.2d 200].)

Petitioner argues that it concluded on the basis of Mr. Bridges' observations that there was doubt as to whether applicant suffered an industrial injury and that there was no evidence that this doubt was not genuine. Petitioner states that to hold the employer liable here for payment of a penalty for its refusal to pay applicant's medical bills renders the employer's investigation meaningless and requires the employer to accept at face value the applicant's statements regarding the claimed industrial injury. The board's eventual determination that applicant did sustain an industrial injury cannot justify the imposition of the penalty.

The doubt as to its liability for an industrial injury must be "reasonable" as well as "genuine" in order for the employer to prevail under Labor Code section 5814. ■ There is no reasonable basis for doubting that applicant was injured. Following the fall, petitioner's superintendent had applicant taken to the hospital. If applicant had not suffered an injury the hospital records would have so shown and the petitioner could have offered them at the hearing. The only other basis for doubt was that the injury was self-inflicted. Petitioner made no specific claim at the hearing that it was. Petitioner offered the stipulated statement of Mr. Bridges but this falls far short of proving an intentional injury, and the burden of proof is on the petitioner. The observations of Mr. Bridges and the applicant's version of the accident could be reconciled. It was for the WCAB to determine if the employer was unreasonable in interpreting the inconsistency that existed as evidence that the injury was fabricated or self-inflicted. The WCAB's decision that the employer was unreasonable in this regard is not itself unreasonable and thus must be sustained upon judicial review. (See Lab. Code, § 5952; see also *Greydanus* v. *Industrial Acc. Com.* (1965) 63 Cal.2d 490, 493-494 [47 Cal.Rptr. 384, 407 P.2d 296].)

III

■ Petitioner contends the board abused its discretion in finding serious and wilful misconduct. Labor Code section 4553 provides for an additional compensation to the employee "where the employee is injured by reason of the serious and willful misconduct" of the employer. ■ ""Wilful misconduct" means something different from and more than negligence, however gross. The term "serious and wilful misconduct" is described . . . as being something "much more than mere negligence, or even gross or culpable negligence" and as involving "conduct of a *quasi* criminal nature, the intentional doing of something

either with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its possible consequences".... The mere failure to perform a statutory duty is not, alone, wilful misconduct. It amounts only to simple negligence. To constitute "wilful misconduct" there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury...."" (*Mercer-Fraser Co. v. Industrial Acc. Com.* (1953) 40 Cal.2d 102, 117 [251 P.2d 955], quoting from *Porter v. Hofman* (1938) 12 Cal.2d 445, 447-448 [85 P.2d 447].)

Knowledge of a dangerous condition can come to an employer by way of a safety ordinance, by way of past accidents, by the advice of others. ■ In the instant case, it came to the employer from applicant who complained to Mr. Cloward about the walkboards and suggested that a pin could be inserted directly into the truck. The WCAB regarded the issue to be one of "credibility determination" between the testimony of applicant and the testimony of Mr. Cloward. As stated in the board's decision, "We also conclude that the workers' compensation judge correctly found that the injury resulted from defendant's serious and wilful misconduct. Without regard to whether technically all the elements of Labor Code Section 4553.1 have been satisfied, the Board notes that the evidence establishes serious and wilful misconduct by failing to provide a safe place to work. (See Labor Code, Section 6400 et seq). In *Abron v. WCAB*, 34 CA3d 232, 109 CR 778, 38 CCC 591 (1973), the Court stated: '...To constitute wilful misconduct there must be either actual knowledge, or that which the law deems the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury. (Citations). An employer must know 'the probable consequences of his failure to provide more adequate safety devices or a safer place to work. He must have put his mind to the existence of a danger to an employee and have failed to take precautions to avert that danger.' (38 CCC at 594).

"In this case applicant stated that he had previously complained about the walk-boards and suggested that holes be drilled through the walk-boards so that a pin could be inserted directly into the truck. He stated that he had discussed this matter with his supervisor, Mr. Cloward, 'perhaps as many as two dozen times.'... He further stated that he had mentioned this within a year of his starting work for Bekins in 1967 and that he would make mention of this 'every so often when

there was an incident or an occasion for comment.' He recalled mentioning it at a safety meeting at the manager's office. Mr. Cloward testified that although he thought the board could be utilized in a safe manner, he had been told on 'more than one occasion' that applicant believed the walk-board was unsafe.

"Mr. Cloward could recall only one incident involving a walk-board type injury and stated that he believed that that other incident was not similar to applicant's incident. Significantly however, defendant did not submit any substantial evidence that the walk-board could in fact be used safely, but rather submitted only the testimony of Mr. Cloward that he believed that it could be used safely without any supporting documentation. Thus the issue here involves a credibility determination. As between the testimony of applicant and the testimony of Mr. Cloward, the judge indicated that he believed applicant to be the more credible witness. In view of applicant's testimony found to be credible by the judge, it is apparent that the employer had actual knowledge of the unsafe condition, knew the probable consequences of the failure to rectify the condition and failed to take precautions to avert the danger. (*Abron, supra*). Moreover defendants submitted no substantial evidence that it would have been unreasonable to have taken precautions to avert the injury. We therefore conclude that the workers' compensation judge's finding as to serious and wilful misconduct was justified."

*Mercer-Fraser Co.* v. *Industrial Acc. Com., supra*, 40 Cal.2d 102, cited by petitioner, is distinguishable from the present case. In *Mercer-Fraser*, an experienced construction superintendent testified that he thought the bracing on a building under construction was sufficient to prevent its collapse. The superintendent was mistaken in his opinion and the building collapsed, injuring construction workers. The court held that in view of the superintendent's belief that sufficient safety precautions had been taken, his mistake of judgment could not constitute serious and wilful misconduct within the meaning of that term. There was no evidence that the superintendent knew or believed that the bracing was unsafe.

In the present case Mr. Cloward testified, "that particular walkboard was unsafe." Thus, unlike *Mercer-Fraser* this is not just a case of mistake in judgment but involves actual knowledge of an unsafe working condition. Considering Cloward's knowledge of and experience in this industry, he qualified as an expert witness and he would know the danger resulting from a walkboard failure. (See *Dowden* v. *Industrial Acc.*

*Com.* (1963) 223 Cal.App.2d 124 [35 Cal.Rptr. 541].) *American Smelting & Refining Co. v. Workers' Comp. Appeals Bd.* (1978) 79 Cal.App.3d 615 [144 Cal.Rptr. 898], is also distinguishable from the present case. In that case there was no evidence that the employer knew the machine was dangerous, in fact it was questionable whether the machine was dangerous. In brief, the present case differs from the cases cited in that Mr. Cloward, the employer's superintendent, had actual knowledge of the unsafe conditions and knew the danger involved.

IV

■ Applicant has requested attorney's fees pursuant to section 5801, which provides that attorney fees may be awarded in addition to the amount of compensation when the employee prevails on a petition for writ of review initiated by the employer and the reviewing court finds that there is no reasonable basis for the petition. "[I]n each instance in which the injured employee prevails upon an employer's petition for a writ of review, the reviewing court should make a separate ruling upon any request for attorney's fees made pursuant to section 5801." (*Employers Mut. Liab. Ins. Co. v. Workmen's Comp. Appeals Board* (1975) 46 Cal.App.3d 104, 108 [120 Cal.Rptr. 48].) For the guidance of those concerned, the court in *Employers Mut. Liab. Ins. Co.* gave illustrations of circumstances in which a court could conclude that there is no reasonable basis for the petition. These circumstances were analogous to the lack of merit of a frivolous appeal. (*Id.*, at pp. 108-109.) There is a reasonable basis for the instant petition particularly on the ground of "serious and wilful misconduct," thus the request for attorney's fees is denied.

The decision of the Workers' Compensation Appeals Board is affirmed.

Poché, J., concurred.

**CHRISTIAN, J.**—I respectfully dissent from that portion of the majority opinion which upholds the imposition of penalties on Bekins for unreasonable delay in payment and for serious and wilful misconduct.

Bekins contested the issue of industrial injury on the basis of the report of applicant's coworker, Verdo Bridges, that he saw applicant kick the walkboard and then jump to the ground while carrying nothing. Bridges did not appear at the hearing but it was stipulated that he

would testify as recited above. I agree with the majority that this stipulation did not require the workers' compensation judge to interpret Bridges' testimony in any particular way or even to credit its truth; the judge was merely required to accept the fact that Bridges would so testify. The judge acted within his role as fact finder when he chose to reconcile Bridges' testimony and applicant's testimony. He did this by disregarding as insignificant the conflict as to whether applicant was carrying anything when he jumped or fell. He then noted that the crucial question was whether the injuries were self-inflicted and that Bridges' testimony did not establish this to his satisfaction. The judge, whose reasoning was accepted by the board, explained that he regarded the conflicts "as really semantic in nature. Whether the applicant's toe kicked the walkboard loose causing him to fall or whether he lost his balance and fell, his injuries are to be industrially compensated unless they were self-inflicted."

The board was entitled to accept this analysis; there was accordingly substantial evidence to support a finding of an industrial injury. This analysis, however, is not the only reasonable interpretation of the evidence. Bridges' report of the incident was directly at odds with applicant's and, though the two reports could be reconciled by ignoring inconsistencies and the ordinary volitional distinction between "fall" and "jump," Bekins was not required to do so in investigating the incident. Nor was Bekins required to accept applicant's version. Taken at face value, Bridges' report would sustain a conclusion that applicant's injuries, if any, were self-inflicted or that there was no injury at all.

Bekins showed that it had a report from the sole witness of the incident that could reasonably support the conclusion that applicant's claim was unjustified. Given this fact, there is no basis for the board's conclusion that Bekins did not entertain a genuine doubt as to whether it was legally required to grant benefits. I would hold that the imposition of penalties under section 5814 was error. (See *City of California City* v. *Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 329 [157 Cal.Rptr. 137].)

The imposition of extra compensation for serious and wilful misconduct also was unjustified. The only evidence supporting such an award is the undisputed fact that applicant had repeatedly expressed his view that the walkboards were dangerous unless secured by a coupling device. There is no evidence of similar accidents and no evidence that anyone else had expressed concern. Unlike the majority, I do not regard

this record as representing a credibility determination. Both parties agreed that applicant told Mr. Cloward that he thought the walkboard unsafe and Cloward's testimony that he did not agree was also undisputed. Thus, the issue comes down to whether it was serious and wilful misconduct for Cloward not to take action in response to applicant's complaints despite his own judgment to the contrary.

The lips on Bekins' walkboards had already been extended from three and one-half inches to seven inches as a safety measure when the type of trailers used by Bekins was changed. Two of the 40 or 50 walkboards had not been extended and management had directed that they were not to be used. Applicant was injured when using a short-lipped walkboard. There is no suggestion as to the reason applicant was using a walkboard with a short lip. It seems clear to me, however, that Bekins had considered the safety of the walkboards and had taken steps to enhance their safety. That the steps taken were not those suggested by applicant does not, on this record, show serious and wilful misconduct.

I would annul the decision of the board insofar as it imposes penalties on Bekins for unreasonable delay in payment and for serious and wilful misconduct.

A petition for a rehearing was denied April 22, 1980. Christian, J., was of the opinion that the petition should be granted. Petitioner's application for a hearing by the Supreme Court was denied May 28, 1980. Richardson, J., did not participate therein.