[Civ. No. 20864. Third Dist. Apr. 21, 1982.]

STATE COMPENSATION INSURANCE FUND, Petitioner, v. WORKERS' COMPENSATION APPEALS BOARD and JOE R. BROWN, Respondents.

934

COUNSEL

Richard A. Krimen, Michael J. Brodie, George S. Bjornsen, Arthur Hershenson and Fernando Da Silva for Petitioner.

Richard W. Younkin, William B. Donohoe, Dexter W. Young, Eugene C. Treaster, John M. Anton and Edward Carol for Respondents.

OPINION

EVANS, J.—Petitioner, State Compensation Insurance Fund (hereafter defendant), seeks annulment of a decision of the Workers' Compensation Appeals Board (hereafter Board) granting penalties, costs and fees in favor of respondent Joe R. Brown (hereafter plaintiff).

On August 30, 1977, plaintiff was injured when the taxicab he was driving was rear-ended. On November 30, 1977, he applied to the Board for adjudication of his claim, and also filed a civil suit against the third party who struck him. Defendant paid temporary disability compensation, and on December 22, 1978, commenced paying permanent disability indemnity; it also filed a lien in the third party suit.

On May 7, 1979, an agreed-upon medical examiner submitted his report, based upon which permanent workers' compensation disability of $5,635 was ultimately awarded.

The third party suit was settled for $15,000, and in March 1980, defendant accepted $5,000 in satisfaction of its lien. Plaintiff personally received approximately $4,000, after deduction of costs and attorney fees from the third party settlement.

Following settlement, defendant stopped permanent disability payments after having paid $4,590 of the anticipated award of $5,635. Thereafter, on March 24, 1981, a hearing was had before a workers' compensation judge. On April 7, he issued his findings and award, which imposed a 10 percent penalty on defendant for failure to pay the full $5,635 permanent disability award, and a 10 percent penalty for failure to pay temporary disability at the proper rate. Plaintiff's counsel was also awarded $300 reimbursement for medical-legal costs, and attorney fees of 10 percent of the benefits provided. Against these sums defendant sought to assert as a credit (under Lab. Code, §§ 3858 and 3861) the $4,000 plus that plaintiff had received in the third party settlement; the judge denied the credit.

The Board granted reconsideration and issued a decision. It affirmed the judge in all respects, except that it allowed defendant the credit it had sought. It also fixed plaintiff's attorney fees at $650, and allowed the fee as a "lien against [the] benefits prior to the deduction of credit."

As a basis for annulment, defendant contends: (1) it was error to impose a penalty for the failure to make full payment of the permanent disability award inasmuch as the employee had received a third party settlement significantly larger than the remaining balance due for the permanent disability; (2) assuming both penalties were proper, they should be offset by credit in the third party settlement; (3) the $300 medical-legal costs should also be offset by the credit; and (4) it was error to grant a priority lien to plaintiff's attorney for his fees.

I

A penalty for failure to complete payment of permanent disability is authorized by Labor Code section 5814, which provides in relevant part: "When payment of compensation has been *unreasonably* delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts. . . ." (Italics added.) Defendant failed to pay $1,045 of the $5,635 which was the eventual permanent disability award. Defendant asserts it was reasonable to do so in light of plaintiff's recovery of more than $4,000 in the third party settlement, arguing it was entitled to a credit against that recovery for the $1,045 still owed. We agree.[1]

■ The only satisfactory excuse for delay in payment of disability benefits is genuine doubt from a medical or legal standpoint as to liability for benefits. (*Kerley* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223, 230 [93 Cal.Rptr. 192, 481 P.2d 200]; *Bekins Moving & Storage Co.* v. *Workers' Comp. Appeals Bd.* (1980) 103 Cal.App.3d 675, 681 [163 Cal.Rptr. 213]; *City of California City* v. *Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 329, 336-337 [157 Cal.Rptr. 137].) In this instance genuine legal doubt as to liability was patently obvious. ■■■ ■ Defendant had paid all but $1,045 of its obligation for permanent disability, and plaintiff negotiated a settlement from which he received more than $4,000; sections 3858 and 3861 authorize a credit for defendant for the amount of the settlement.[2] That credit absolved defendant of any liability to pay further amounts pursuant to the determined disability. Discontinuance of payments was legally proper.

---

[1] It also argues it was justified in withholding some of the payment as a reserve for plaintiff's attorney. Although the argument was not made before the Board, it is meritorious and could support the claim.

[2] It is true defendant had received $5,000 in satisfaction of its lien right; however, this did not necessarily affect its right to a credit. The right to a credit and the right to a lien are separate and distinct. The lien allows the employer to be *reimbursed* for money already paid, while the credit is taken against sums which *may become due* in the future. The employer loses the credit right only through express waiver or settlement, not with the mere satisfaction of a lien claim. (*Herr* v. *Workers' Comp. Appeals Bd.* (1979) 98 Cal.App.3d 321, 327-328 [159 Cal.Rptr. 435]; Lab. Code, §§ 3856, 3858, 3861; Cal. Workmen's Compensation Practice (Cont.Ed.Bar 1973) § 1.14, pp. 11-12.) As noted, the Board did grant defendant a credit, in spite of the fact that the lien had been satisfied.

Defendant's right to a credit could only be asserted against compensation yet to be paid; defendant's reimbursement rights had been exhausted upon the earlier satisfaction of its lien. To have continued payment of the final $1,045 would have been financially foolhardy.

■ Plaintiff argues there was no doubt as to his legal entitlement to benefits, because the medical examiner's report confirmed the existence of permanent injury, asserting the only doubt was to the defendant's *obligation to pay.* Plaintiff calls the distinction critical, "[c]onsidering the purposes of the workers' compensation laws, and the statutory protections (particularly third party subrogation rights) available to carriers in such a position, . . ." The essence of the argument is apparently an absence of a genuine legal doubt.

He is wrong. Genuine doubt as to legal liability or, otherwise stated, actual obligation to pay, constitutes a basis for nonpayment pursuant to section 5814. Section 5814 is aimed at encouraging the employer to timely provide the relief to which the employee is entitled (*Dorman* v. *Workers' Comp. Appeals Bd.* (1978) 78 Cal.App.3d 1009, 1021 [144 Cal.Rptr. 573]); however, the penalty is to be applied only when the employer *unreasonably* delays or refuses the relief. The rationale behind allowable delay for genuine medical or legal doubt is that there may ultimately be no medical or legal obligation to pay. That rationale is applicable here; the availability of a credit arising from the third party settlement promised to relieve defendant from any further obligation.

Moreover, the concepts of liability for benefits and obligation to pay them are treated synonymously in the law. Plaintiff cites disparate wordings in Labor Code sections 3858 and 3861 as evidence of a distinction; in our view they reveal the contrary. Labor Code section 3858 relieves the employer from "the obligation to pay further compensation" up to the balance of a third party judgment after deduction of litigation expenses, attorney fees, and the employer's lien. Section 3861 gives the employer a credit "to be applied against his liability for compensation" for such a balance, whether recovered by settlement or after judgment. The two sections treat the same concept, credit for a third party recovery; one uses "obligation to pay further compensation," and the other "liability for compensation." The only inference to be drawn is that the phrases are interchangeable, and that a genuine doubt as to liability *or* as to obligation to pay eliminates application of the penalty provided by section 5814.

Plaintiff also argues that for a variety of reasons the risk of overpayment should be put on defendant.[3] Again his rationale is unsupportable; there is simply no reason to overpay where, as here, the employee has received or will receive a settlement amount which will exceed the amount of unpaid disability. ■ "In penalty cases the [B]oard should proceed with a view toward achieving a fair balance between the right of the employee to prompt payment of compensation benefits, and the avoidance of imposition upon the employer or carrier of harsh and unreasonable penalties." (*Gallamore* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 815, 828 [153 Cal.Rptr. 590, 591 P.2d 1242].)

Our conclusion obviates the necessity of discussion of the contention dealing with the Board's failure to cite authority for its decision.

## II

■ The Board correctly allowed credit against the penalty assessed for incorrect payment of temporary disability.

Labor Code section 3861 provides that the credit shall be "applied against ... liability for *compensation*, ..." (Italics added.) Thus the question is whether liability to pay the penalty can be termed liability for "compensation."

Superficially the penalty does not seem to fall within the common notion of compensation. The penalty paid does not go toward making the injured employee whole; it is designed instead to help him promptly obtain the relief to which he is entitled, and to insure that his employer provides that relief in a timely fashion. (*Dorman* v. *Workers' Comp. Appeals Bd., supra,* 78 Cal.App.3d at p. 1021.) However, the authorities indicate that the term "compensation" in this area is not given its common definition.

*Adams* v. *Workers' Comp. Appeals Bd.* (1976) 18 Cal.3d 226 [133 Cal.Rptr. 517, 555 P.2d 303], considered whether medical-legal costs were compensation under section 5814. The court concluded they were,

---

[3]He cites the constitutional mandate to accomplish substantial justice in workers' compensation cases (Cal. Const., art. XIV, § 4); the employer's low exposure due to low indemnity rates; the alleged availability of rulings declaring an end to the employer's obligation to pay; and the ability of employers to negotiate liens that will protect their interests.

reasoning that section 3207 defines compensation as including "every benefit *or payment* conferred by Division 4 [of the Labor Code] upon an injured employee, ..." (italics ours), and the statutory authority for reimbursement of medical-legal costs is found in division 4. In *State Compensation Ins. Fund.* v. *Workers' Comp. Appeals Bd.* (*McDowell*) (1977) 76 Cal.App.3d 136 [142 Cal.Rptr. 654], it was held that because medical-legal costs are considered "compensation," they may be offset by credit pursuant to section 3861. In addition to medical-legal costs, interest has been held to be compensation as it is provided for in division 4. (*Laucirica* v. *Workmen's Comp. Appeals Bd.* (1971) 17 Cal.App.3d 681 [95 Cal.Rptr. 219].)

The clear indication is that section 3207's definition is to be taken literally: every payment conferred by division 4 is to be considered compensation. Section 5814 falls in division 4, and the penalty it authorizes must be considered compensation, liability for which may be offset against the credit authorized by section 3861.

### III

The foregoing reasoning and conclusion also compels affirmance of defendant's contention that the $300 reimbursement for medical-legal costs (for a medical report) must also be offset by the credit. (*McDowell, supra*, 76 Cal.App.3d 136.)

However, plaintiff rejoins that the reasoning of *McDowell* is not applicable. He argues that the $300 was awarded to the attorney, not the employee, and only payments conferred upon an employee are "compensation" under section 3207 and subject to the credit of section 3861. Despite the phraseology of the Board's award, the authority to reimburse is derived from section 4600, which provides that "the *employee*, ... shall be reimbursed for expenses ... incurred for ... medical reports, ..." (Italics added.) The $300, then, is part of plaintiff's compensation, and may be offset by the credit.

### IV

Finally we consider the lien allowed for the $650 attorney fees. In awarding the fees the Board said: "The Board recognizes that, allowing credit to defendant, there may be insufficient remaining indemnity payable to applicant from which to deduct the fee of applicant's attorney. Therefore, we are inclined to agree with counsel's argument that his fee

should be a priority lien against compensation, payable to counsel in advance of deduction of credit for settlement proceeds. In the Board's estimation a reasonable fee is $650.00 considering the extent of efforts and the results achieved. Therefore our decision after reconsideration will provide credit for settlement proceeds after payment of counsel's lien of $650.00."

■ The lien for the attorney fees is improper. The Board's authority to award liens for attorney fees derives from section 4903, subdivision (a).[4] That section specifies that the lien is to be allowed "against any sum *to be paid* as compensation, . . ." (Italics added.) The Board acknowledged that funds might not be available once the amount defendant owed was credited; yet it nevertheless awarded plaintiff's attorney $650. The only sums possibly payable were the penalties assessed. Those penalties which we have considered proper under section 3861 may be extinguished by the credit eliminating potential of any "sum to be paid;" the effect would be to coerce defendant to pay $650 more than it owed in the workers' compensation proceeding. This the Board cannot do.[5] If the credit proves greater than the outstanding debt the attorney fees will have to be considered as paid.

The order awarding the penalty for incomplete payment of permanent disability is annulled; defendant's credit shall be taken against the temporary disability penalty and the $300 medical-legal costs award; the lien for $650 in attorney fees shall stand only if and to the extent any sums remain payable to the employee after application of the cred-

---

[4]Section 4903 provides in relevant part: "The appeals board may determine, and allow as liens against any sum to be paid as compensation, any amount determined as hereinafter set forth in subdivisions (a) through (i). If more than one such lien be allowed, the appeals board may determine the priorities, if any, between the liens allowed. The liens which may be allowed hereunder are as follows: [¶] (a) A reasonable attorney's fee for legal services pertaining to any claim for compensation either before the appeals board or before any of the appellate courts, and the reasonable disbursements in connection therewith."

[5]*State Compensation Insurance Fund* v. *Workmen's Comp. Appeals Bd.* (*Chester*) (1971) 36 Cal.Comp.Cases 678 (writ den.), presents a special situation. There a referee awarded an employee $4,515, less $450 for his attorney's fee. It was then discovered the Fund had paid so much toward the award that only $40 remained to pay the attorney. The referee ordered the Fund to pay the attorney the entire $450, as punishment for paying too much to the employee when it should have known the attorney would have a lien.

There is no similar cause to punish defendant here, for it did not pay to the brink as in *Chester*. There remained $1,045 from which to satisfy plaintiff's attorney. It is no fault of defendant that this sum became subject to a credit when plaintiff settled his third party suit.

it. The Board shall calculate the credit and issue a new order not inconsistent with this decision.

Puglia, P. J., and Sparks, J., concurred.