[Civ. No. 56546. Second Dist., Div. One. July 10, 1980.]

JOHN T. DUFF, Plaintiff and Appellant, v.
CITY OF GARDENA et al., Defendants and Respondents.

COUNSEL

Silver, Wells & Kreisler and Charles A. Goldwasser for Plaintiff and Appellant.

Michael H. Miller, City Attorney, for Defendants and Respondents.

OPINION

HANSON (Thaxton), J.—John T. Duff formerly employed as a fireman appeals from a superior court order denying a writ of mandamus to compel the City of Gardena and the City Council of Gardena (hereafter referred to collectively as Gardena) to render a determination that he suffered from an employment-related mental or emotional condition at the time of his discharge which would qualify him for disability retirement benefits.

FACTS

The record discloses that on July 10, 1971, Duff began a one-year probationary period as a fireman for Gardena. The City contracts with the Public Employee Retirement System of the State of California (hereafter referred to as PERS) with respect to retirement benefits for its employees. Under that system, a fireman is designated as a "local safety member." (Gov. Code, § 21023.6.)[1] Gardena, by the regulations established by the City's municipal code, has a prescribed one-year probationary period for new employees with a provision for an extension of up to six months in the event the appointing authority has some reservation whether to recommend permanent status for an employee at the end of the first year.

At the end of Duff's first year, he was described by his supervisor as willing and personable but his extreme nervousness and lack of self-confidence led him to make an excessive number of mistakes. A request for a 90-day extension of Duff's probationary period was granted. At the end of that period, on October 10, 1972, Duff was terminated on the ground that he was unable to maintain the standards expected of men within the fire department. His last day of active service was October 4, 1972.

Following termination Duff filed a claim with the Workers' Compensation Appeals Board (hereafter referred to as WCAB) alleging that he sustained a compensable injury during the period from July 1, 1971, through September 10, 1972. The WCAB on April 4, 1973, made Duff an award on the basis of psychiatric-emotional injury which resulted in temporary total disability. Pursuant to that award, Duff received payment from Gardena for one year in accordance with Labor Code section 4850.

---

[1]All statutory references are to the Government Code unless otherwise specified.

On June 3, 1974, after those benefits terminated, Duff applied to PERS for a disability retirement (§ 21020 et seq.) claiming that he had become mentally incapacitated to perform his duties as a fireman as a result of industrial disability. By letter of July 18, 1974, addressed to the City Manager, PERS inquired whether Duff was discharged for cause, whether he was at the time of separation unable to perform his duties because of a work incurred injury, whether he was at the time of discharge receiving workers' compensation benefits, and whether there was any question that Duff was emotionally incapacitated at that time. Gardena on August 13, 1974, responded that Duff was dismissed for cause and that he was terminated "on his inability to function satisfactorily as a Fireman; not for any work incurred injury that was evident at that time," that the answers to the final two inquiries were negative, and that "We have no accident reports on Mr. Duff." In a second letter of September 24, 1974, Gardena declared unequivocally "It is our opinion that Mr. Duff separated from employment with the City of Gardena for reasons not related to industrial disability."

PERS thereupon administratively denied Duff's claim for disability retirement relying on section 21023.6[2] and Duff appealed to the PERS Board of Administration (hereafter referred to as the Board). The Board, after hearing, denied his application without prejudice on the following basis: "Government Code Section 21023.6, in pertinent part, provides that a local safety member shall be retired for disability only upon his employer's determination that he is incapacitated physically or mentally for the performance of the duties of his position and termination of his employment for that reason. Since no such determination has yet been made by the City of Gardena, the Public Employees' Retirement System is precluded from granting [appellant's] application at this time. If such a determination is subsequently made by the City, either voluntarily or by an appropriate court order, the System can reconsider the application."

Duff thereafter approached Gardena once again with a request that it make the requisite determination to enable him to obtain disability retirement. Disability retirement benefits would be one-half of Duff's yearly salary for life and if he were on disability retirement, Gardena under PERS would have the statutory authority to reexamine Duff,

---

[2]We note for the record that section 21023.6 was repealed in 1975. In conjunction with its repeal, section 21024 was amended to incorporate certain of its provisions. It does not appear and is not contended that the repeal of that specific section has any relevancy to the application of section 21023.6 in the case at bench.

cancel his retirement and cause him to reenter the system. Gardena, however, refused to make this determination because Duff was terminated as a probationary employee and was not otherwise eligible for retirement.

Duff subsequently on May 28, 1976, served Gardena with a petition for writ of mandate and hearing in superior court took place on May 2, 1978.

The trial court on the basis of these facts concluded that Duff's delays in seeking disability retirement were prejudicial to the City and constituted laches, that Duff was terminated as a probationary employee, hence neither sections 21023.5 nor 21023.6 (now 21024) are applicable; that Gardena's conduct was not arbitrary or capricious and did not constitute a violation of due process; that Gardena has no duty to perform the acts requested by Duff and that for the court to compel such action would be contrary to public policy. The writ was denied and Duff has appealed.

### ISSUES

Duff contends (1) that the trial court erred in denying mandamus since there is no distinction between probationary and permanent employees with respect to disability retirement; (2) that denial of his vested rights to retirement violates due process; and (3) that the record does not disclose unreasonable delay or prejudice to Gardena resulting from the delay and therefore there was no basis for a determination by the trial court that he was foreclosed by laches.

### DISCUSSION

### I

■ The requirements for mandamus are: (1) a clear, present, and usually ministerial duty on the part of the respondent, and (2) a clear, present and beneficial right in the petitioner to the performance of that duty. (Code Civ. Proc., § 1085; 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 61, p. 3838.) ■ As a consequence, it may lie to compel public officers, boards, and agencies to perform an act which law specifically requires them to perform. However, while it may be employed to compel performance of a duty which is purely ministerial in character, it cannot be applied to control discretion as to a matter

lawfully conferred upon an administrative agency or, as in the present case, the governing board of a municipality. (*People* ex rel. *Younger* v. *El Dorado County* (1971) 5 Cal.3d 480 [96 Cal.Rptr. 553, 487 P.2d 1193]; *Larson* v. *City of Redondo Beach* (1972) 27 Cal.App.3d 332 [103 Cal.Rptr. 592].) ■ Mandamus will not lie to compel the performance of any act which would be void, illegal or contrary to public policy. (*Swan* v. *Civil Service Commission* (1971) 16 Cal.App.3d 710 [94 Cal.Rptr. 236].)

■ In the instant case the record discloses that, as the trial court found, Gardena has adopted a system of rules and regulations for the administration of its personnel system which prescribe a valid probationary process. The probationary period for new employees is part of a testing process which is designated to be used for observing the employee and gives the city the opportunity to reject any employee who fails to meet the standards of the job notwithstanding the fact that he may have passed the required examination. The function of the city fire department is critical and requires high standards of performance in hazardous conditions which Duff was unable to meet. Gardena exercised its option to terminate his employment.

Accordingly, once discharged, Duff was no longer a local safety member in the employ of Gardena. Sections 21021 and 21022 set forth the conditions precedent to disability retirement for members of PERS unqualified by distinctions between probationary and permanent employees. While nonsafety members are required to have five years of state service to qualify, local safety members are entitled to disability retirement if at any time they are incapacitated as the result of industrial injury. However, "a local safety member shall be retired for disability only upon his employer's determination that he is incapacitated physically or mentally for the performance of the duties of his position and termination of his employment for that reason." (§ 21023.6.) A local safety member may thereafter be reinstated only on his employer's determination that he is no longer incapacitated for the duties of the position held when retired.

Here, Duff argues that his status as a terminated probationary employee at the time he applied for disability retirement did not foreclose him from having a determination of the existence of a disability that incapacitated him for his duties and whether that disability was industrial in nature. He apparently seeks a hearing by the city where he can introduce medical evidence that he failed to meet the standards of his

employment during the probationary period due to such disability and that the city therefore was not entitled to terminate him for cause. (§ 21023.5.[3])

■ In the case at bench Duff points to the WCAB award as evidence of his industrial injury during the probationary period. However, that award is not sufficient evidence that a local safety member has qualified as disabled for purposes of obtaining disability retirement. (*Summerford v. Board of Retirement* (1977) 72 Cal.App.3d 128 [139 Cal.Rptr. 814].) Moreover, since resignation during leave of absence disqualifies an employee for workers' compensation benefits (*Collins v. County of Los Angeles* (1976) 55 Cal.App.3d 594 [126 Cal.Rptr. 541]), it would appear, a fortiori, that dismissal for cause would have a similar result under Labor Code section 4850. In any event, the fact that Duff obtained a workers' compensation award, whether legitimately or not, does not render him an employee of Gardena beyond his discharge on October 10, 1972.

■ We, therefore, hold that in view of Duff's termination for cause during the probationary period, he acquired no vested rights to be qualified for disability retirement under PERS. The conditions for disability retirement which he was required to fulfill are prescribed by section 21023.6. The city made the determination required thereunder and declared by letter unequivocally that Duff was not terminated for incapacity caused by work-incurred injury of any kind, and that, in fact, there was no accident report relating to him.

## II

■ We secondly conclude that under the circumstances of this case, since Duff had not acquired a vested interest in disability retirement benefits, pursuant to PERS, he was not deprived of due process (see, e.g., *Patton v. Governing Board* (1978) 77 Cal.App.3d 495, 499 [143 Cal.Rptr. 593]) nor are reviewing courts required to exercise an independent judgment of the evidence (*Quintana v. Board of Administration* (1976) 54 Cal.App.3d 1018 [127 Cal.Rptr. 11]).

---

[3]Section 21023.5 provides: "Notwithstanding any other provision of law, an employer may not separate because of disability a member otherwise eligible to retire for disability but shall apply for disability retirement of any member believed to be disabled, unless the member waives the right to retire for disability and elects to withdraw contributions or to permit contributions to remain in the fund with rights to service retirement as provided in Section 20393."

## III

■ Finally, and perhaps most forcefully, we conclude the record does support the trial court's determination that Duff is precluded by laches from pursuing his alleged claim to disability retirement. His delay in prosecuting this claim was patently prejudicial to Gardena which would find it difficult, if not impossible, in the event he has suffered some deterioration in his mental or emotional condition since discharge to find medical authority competent to differentiate the causes of the impairment. Gardena told PERS that there was no report of any work-incurred disability at the time Duff was discharged in October 1972. Duff only after his dismissal applied for and obtained a workers' compensation award which issued on April 4, 1973. It was not until June 3, 1974, that he applied for disability retirement and over a year later that PERS on August 13, 1975, finally denied that application.

Nine months later Duff issued and served Gardena with his petition for mandate and he first set hearing on this matter in March 1978, almost two years after filing the petition. It is clear that public policy would be violated in the instant case should the court order the city to make a determination favorable to Duff on the issue of whether he was discharged for inability to perform his duties as a result of industrial accident. Such an order might have the adverse effect of giving an employee who served a probationary period of slightly over one year lifetime disability benefits of one-half his salary where there is no indication whatsoever that he even reported a work-related injury. Under the circumstances, we hold the court below committed no abuse of discretion in denying the writ.

### DISPOSITION

The order of the trial court is affirmed.

Jefferson (Bernard), Acting P. J.,* and Radin, J.,† concurred.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

†Assigned by the Chairperson of the Judicial Council.