[Civ. No. 68307. Second Dist., Div. Seven. Oct. 3, 1983.]

MARY THELANDER, Plaintiff and Respondent, v.
CITY OF EL MONTE et al., Defendants and Appellants.

COUNSEL

Parker & Dally, Joan E. Partritz and Sidney Maleck, City Attorney, for Defendants and Appellants.

Lewis, Marenstein & Kadar and Michael T. Roberts for Plaintiff and Respondent.

OPINION

JOHNSON, J.—This case presents an issue not specifically addressed in earlier decisions, as best our research can determine. Is a probationary safety officer disabled during police academy training entitled to a disability retirement pension? Under the circumstances of this case, we hold the trial court acted properly in ordering the pension board to grant the requested disability pension.

I. FACTS AND PROCEEDINGS BELOW

Mary Thelander, petitioner and respondent, was a part-time reserve officer for the City of El Monte Police Department from September 1973 through 1975. On January 1, 1976, she was appointed to regular police

officer status thereby becoming a full time although probationary employee. Once on full time status she was required by city ordinance 1041 to attend the police training academy. In order to become a full duty police officer a probationary employee must successfully complete the training course and perform to the department's satisfaction during the probationary year.

Officer Thelander had been diagnosed in 1973 as having asymptomatic scoliosis. Scoliosis is a congenital defect of the spine involving in her case the dorsal lumbar area. The El Monte Police Department was aware of the diagnosis when they originally hired Thelander.

Officer Thelander began police academy training on March 12, 1976. Upon awaking on the third morning of training, respondent experienced pains in her upper and low back. The pain prevented her from continuing the training. The independent medical examiner appointed by the Workers' Compensation Appeals Board (WCAB), Dr. Kornblum, stated that exercises in general caused the onset of these symptoms.

Officer Thelander did not return to the academy. She did, however, return to the duties which she had previously performed as a part-time reserve officer, both in the office and on patrol. Failure to complete the academy training precluded respondent from performing as a police officer pursuant to ordinance 1041.

On September 23, 1976, the city administration recommended terminating Officer Thelander in the following brief memorandum: "It is recommended that MARY THELANDER, Police Officer in the Police Department be terminated for unsatisfactory performance during her probationary period effective October 1, 1976. Due to physical reasons Ms. Thelander is unable to attend and complete the P.O.S.T. required police academy and perform the required duties of a police officer." On September 28, 1976, the El Monte City Council granted this request. The council's concurrence was recorded on a "Personnel Action" which recited the following explanation for termination: "Employee is incapable of attending the POST required Police Academy and perform Police Officer duties as determined by State of California Compensation Insurance Fund. Employee has been awarded disability compensation."

At that point, El Monte notified Officer Thelander of her termination. She did not retire at that time or any time prior to her termination date. Officer Thelander then filed an application with the WCAB claiming injury and disability as a result of her employment. The board found Officer Thelander to be permanently disabled and awarded compensation costs.

Thelander filed to reopen her case on December 20, 1976, claiming new and further disability. The level of disability had not increased and therefore no new disability was established. However, Thelander also sought a determination by the WCAB as to industrial causation, pursuant to Government Code section 21026.[1] The May 8, 1980, findings on the issue, established industrial disability at 18 percent. On October 30, 1981, respondent filed a petition for writ of mandate requesting that the court order the City of El Monte to grant her an industrial disability retirement pension based on the WCAB's findings.

The City of El Monte on November 16, 1981, determined upon review of the medical and other evidence that respondent was "not incapacitated physically within the meaning of the Public Employees' Retirement [System (PERS)] Law for performance of her duties in the position of Police Officer."

The superior court held three hearings regarding respondent's petition. On June 2, 1982, the court filed a judgment in favor of Officer Thelander and issued a peremptory writ of mandate, ordering the city to grant her industrial disability retirement. Notice of appeal was timely filed on August 2, 1982, and briefing completed on May 17, 1983.

The trial court found it "inconsistent to say that she cannot perform the duties of the job because of this scoliosis, but also to say at the same time that she is not substantially disabled from performing the duties of that job." In the trial court's analysis one of the duties of the job is to complete the academy program. It is undisputed that Thelander is physically incapable of completing the program. It is further undisputed this incapacity arises from an industrially caused disability. Given those findings and a further finding that no distinction is made between the rights of probationary and nonprobationary safety officers to receive disability pension awards, the trial court granted the petition for mandamus.

The trial court proposed a permanent light duty assignment for Officer Thelander as an alternative to retirement. The police department stated it

---

[1] "If a member is entitled to a different disability retirement allowance according to whether the disability is industrial or nonindustrial and the member claims that the disability as found by the board, or in the case of a local safety member by the governing body of his employer, is industrial and such claim is disputed by the board, or in case of a local safety member by such governing body, the Workers' Compensation Appeals Board, using the same procedure as in workers' compensation hearings, shall determine whether such disability is industrial.

"The jurisdiction of the Workers' Compensation Appeals Board shall be limited solely to the issue of industrial causation, and this section shall not be construed to authorize the Workers' Compensation Appeals Board to award costs against the system pursuant to Section 4600, 5811, or any other provision of the Labor Code."

has no category of light duty assignments. Neither can the police department accept Thelander as a full duty officer due to her now lowered level of physical ability. Confronted with that dilemma, the trial court held disability retirement benefits must be granted.

██ II. THE SUPERIOR COURT'S FINDING THAT THELANDER WAS IN-CAPACITATED TO PERFORM THE DUTIES OF A POLICE OFFICER WAS SUP-PORTED BY THE EVIDENCE.

We have reviewed the superior court's grant of the administrative mandate awarding Ms. Thelander a disability pension. We hold the findings to be supported by substantial, essentially undisputed evidence. Two independent and sufficient grounds sustain this conclusion.

A. *The evidence shows Thelander to be physically incapable of performing the required duties of an El Monte police officer even ignoring the training requirement.*

Government Code section 21022 states: "Any patrol, state safety member, state industrial, or local safety member *incapacitated for the performance of duty* as the result of an industrial disability shall be retired for disability, pursuant to this chapter, regardless of age or amount of service." (Italics added.) ██ *Mansperger* v. *Public Employees' Retirement System* (1970) 6 Cal.App.3d 873, 876 [86 Cal.Rptr. 450], relied upon by El Monte, held section 21022's requirement of incapacity for the performance of duty to mean a *substantial* inability to perform the *usual* duties of the job.[2] ██ The question then is what are the usual duties of an El Monte police officer.

El Monte's attorney (speaking for the police chief) presented evidence to the trial court that every police officer is required to operate at the same level as a field officer regardless of her assigned position. This admission negates El Monte's contention that a distinction exists between the daily requirements of the job and the rare strenuous activities that may occasionally be involved. If every officer must be capable of and prepared for the worst everyday, then that is a "usual" duty of the job.

Among the countless duties which a field officer might be required to perform at any given moment are such physically strenuous acts as: (1) Subduing a violent suspect (who might easily be larger and stronger than

---

[2]Mansperger's pension was denied because he was held capable of performing his "usual" duties. However, his usual duties as a fish and game warden were far less strenuous than those of a city police officer. (*Id.* at pp. 874, 876-877.)

Officer Thelander), (2) engaging in a chase which could entail running, climbing, jumping, crawling and other means of pursuit, (3) quelling a disturbance, (4) breaking up a fight, (5) dragging or carrying a victim out of danger. Indeed it is precisely these activities for which the police academy program is intended to prepare each candidate. And it is Officer Thelander's physical incapacity to perform these sorts of activities which prevent her from completing academy training.

The undisputed fact that Officer Thelander cannot complete the academy training due to the injury she sustained during that program is certainly strong evidence she also would be unable to perform the full range of duties required of a police officer. It would seem a clear contradiction bordering on the absurd to say one was physically incapable of one performance (academy training) and at the same time capable of the equivalent (field police work).[3]

There also is additional evidence in this record to support a finding Officer Thelander is physically incapable of performing the usual full field duties of an El Monte police officer. Thelander has been warned by several doctors against undertaking physically strenuous work, such as that involved in the training and full duty functions of a police officer. In October of 1976 Dr. Singelyn advised her against patrol-type work. Dr. Roberts in December of the same year recommended a status of light work. After a very thorough examination and review of her medical history, Dr. Kornblum found Thelander's symptoms reach the "moderate level on performance of very heavy types of activities." She should therefore "not engage in very heavy types of work."

Moreover, the WCAB medical examiner restricted Officer Thelander from any duty requiring heavy lifting. It does not take much imagination or extensive exposure to television news shows to conceive of a situation in which a police officer is required to lift or carry someone or something, all in a day's work. When one analyzes the scope of a police officer's duties in the field, heavy lifting certainly figures prominently on the list. Officer

[3]We note El Monte itself recognized Officer Thelander's incapacity to perform usual police work in its initial memoranda terminating her employment. The recommendation from the city administration not only stressed her inability to complete academy training but that "Ms. Thelander is unable to . . . perform the required duties of a police officer." Similarly, the city council approved a personnel action which recited: "Employee is incapable of . . . perform[ing] Police Officer duties . . . ." Since we decide this case on other grounds, we find it unnecessary to reach the issue of whether this statement of reasons for termination estops El Monte from taking a contrary position when the terminated officer applies for disability benefits. Nonetheless, it is still further evidence supporting the conclusion that Officer Thelander is incapable of performing the required usual duties of an El Monte police officer.

Thelander's permanent lifting restriction alone is strong evidence she was incapacitated to perform the full, usual duties of a police officer.[4] Coupled with El Monte's admission Thelander was too disabled to complete the police academy training course and the medical evidence about her condition, substantial evidence clearly existed to support a finding she was "incapacitated for the performance of duty" within the meaning of Government Code section 21022.

B. *Thelander's injuries have rendered her incapable of completing the police academy training which itself is a requirement of the job.*

The city terminated Officer Thelander because in its analysis she would never be physically able to complete the academy training program required by ordinance No. 1041.[5] That statement by itself admits to Officer Thelander's "permanent disability." By further acknowledging the WCAB finding that her disability was caused by a work-related injury, the city puts itself squarely within the terms of Government Code section 31720. Section 31720 in part provides: "Any member permanently incapacitated for the performance of duty shall be retired for disability regardless of age if, and only if: (a) The member's incapacity is a result of injury or disease arising out of and in the course of the member's employment, and such employment contributes substantially to such incapacity . . . ."

City ordinance No. 1041 requires all police officers to complete police academy training. El Monte dismissed Officer Thelander because it found her *incapable* of completing the academy program. The same city cannot then, without turning from Jekyll to Hyde, say she nonetheless is *capable* of performing the duties of a police officer, when one of those duties is completion of academy training.

Perhaps the full implications of El Monte's position can be better understood if we assume Officer Thelander had suffered her back injury not during training in March 1976 but while subduing a suspect in January or February of that same year. Recall Officer Thelander became a probationary regular officer entitled to disability pension protection a full two months

---

[4]Of course, if the department offered the disabled officer a light duty assignment not requiring heavy lifting, the officer would not be entitled to a pension. (See pages 745-746, *infra.*)

[5]This ordinance reads in pertinent part: "2440. DECLARATION OF INTENT. The City Council declares that it desires to qualify to receive aid from the State under the provisions of Chapter 1 of Title 4, Part 4 of the California Penal Code.

"2441. ADHERENCE TO STATE STANDARDS. Pursuant to Section 13522 of said Chapter 1 of Title 4, Part 4 of the California Penal Code, City, while receiving aid from the State pursuant to said Chapter 1, will adhere to the standards for recruiting and training established by the California Commission on Peace Officer Standards and Training."

before starting police academy training. During January-February 1976 she performed the regular duties of members of the department. Had she been disabled on patrol, she would have been unable to attend the academy. Hence for that reason she would have been ineligible to continue as a regular officer. Under El Monte's theory, she also would have been ineligible for a disability pension since she theoretically would be capable of performing the other duties of the job. Denial of a pension in these circumstances might be a more obvious violation of the state law guaranteeing industrial disability pension protection to police officers from the moment they begin employment. (Gov. Code, §§ 21021 and 21022; see discussion at p. 747, *infra*.) But the fact Thelander suffered her injury during training instead of before she started the course is no reason to strip her of that protection.

City ordinance No. 1041 by requiring all officer candidates to complete the training program establishes that performance as a part of the job description. Successful completion of the academy training is part and parcel of the job of a police officer. The training requirement is analogous to the periodic health and performance tests a police department might require permanent officers to pass in order to retain their positions on the force. Would a police department be allowed to terminate an industrially injured officer on grounds she failed a required annual physical examination or performance test yet deny her a disability pension because she was "capable" of performing the "usual" duties of the job? Pretty clearly not. (Cf. *Boyd* v. *City of Santa Ana* (1971) 6 Cal.3d 393, 397 [99 Cal.Rptr. 38, 491 P.2d 830]; *City of California City* v. *Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 329, 336 [157 Cal.Rptr. 137]; *Roccaforte* v. *City of San Diego* (1979) 89 Cal.App.3d 877, 888 [152 Cal.Rptr. 558]; Annot. (1982) 12 A.L.R.4th 1158, 1163, 1174—summary of cases suggests general conditions considered in determining whether officer meets disability requirements.) If that were permissible, police departments would be able to simultaneously discharge and deny pension rights to many industrially disabled police officers any time they wanted to. We hold El Monte cannot enforce a substantially identical policy against Officer Thelander in this case.

III. THE ALTERNATIVE OF PROVIDING THELANDER WITH A PERMANENT RESTRICTED DUTY POSITION APPARENTLY IS NOT AVAILABLE.

The assignment to light duty as an alternative to retirement is an established and desirable practice in public service employment. (*Winslow* v. *City of Pasadena* (1983) 34 Cal.3d 66, 70 [192 Cal.Rptr. 629, 665 P.2d 1].) *Craver* v. *City of Los Angeles* (1974) 42 Cal.App.3d 76, 80 [117 Cal.Rptr. 534] held that a "person should not be retired if he can perform duties in a given permanent assignment within the department. He need not

be able to perform any and all duties performed by . . . policemen. Public policy supports employment and utilization of the handicapped. [Citation.] If a person can be employed in such an assignment, he should not be retired with payment of a disability retirement pension." (See generally Henke, *Judicial Review of Local Governmental Administrative Decisions in California* (1976) 10 U.S.F. L. Rev. 361, 381, fn. 98, citing *Craver* as case in which court applied independent judgment test in reviewing local administrative decisions involving pension rights.)

■ Officer Thelander had continued to work for a few months after her injury in a limited duty position of which she was fully capable. It is that ability in fact which the city claims establishes her ineligibility for pension relief. But that light duty position was not available to Officer Thelander on a permanent basis. Indeed El Monte continues to deny that any position is available which does not require the completion of police academy training.

The city's reliance upon the case of *O'Toole* v. *Retirement Board* (1983) 139 Cal.App.3d 600 [188 Cal.Rptr. 853] is misplaced. O'Toole was denied pension benefits because he was held to be capable of performing the duties of his permanent assignment with the department. Although the police department claimed it had no "light duty" positions available it was willing to retain O'Toole in his current position for so long as he chose to remain with the force. O'Toole was not terminated because of his disability; he left voluntarily to pursue another opportunity and sought disability benefits as well. (*Id.* at p. 602.) In contrast the City of El Monte by its words and actions seeks to withhold both the job and the benefits from Officer Thelander. This takes Thelander's situation out of the policies furthered by decisions such as *O'Toole, Winslow* and *Craver*. Instead her case falls closer to the "Catch 22" decried in *Roccaforte*.[6]

---

[6]In *Roccaforte* v. *City of San Diego, supra,* 89 Cal.App.3d at page 884, one city agency ended a police officer's injury leave pay because it found his condition had become permanent. Another city agency, the police department, refused to reinstate him for the same reason. Yet a third city agency, the retirement board, refused him a disability pension on grounds he was not permanently incapacitated. Reversing the trial court's decision upholding all three decisions, the Court of Appeal observed:

"The end result of this schizoid approach to the contractual duty owed by the City to Roccaforte is a Catch 22 situation for Roccaforte. Although he was concededly injured in the course of his duties as a police officer and for that reason he has not been permitted to return to duty, yet he is denied any relief during his period of incapacity due to conflicting views taken by different agencies of the same medical reports. . . .

"Roccaforte was unfit for police duties due to a job related injury. This prime determination compelled payment of injury leave pay; or if Roccaforte's injuries were permanent and stationary—and he was still not acceptable for work—an appropriate award by the Retirement Board was in order." (89 Cal.App.3d at p. 888.)

■ IV. THE PENSION RIGHTS OF A SAFETY MEMBER VEST UPON ACCEPTANCE OF EMPLOYMENT NOT WHEN SHE SUCCESSFULLY COMPLETES THE PROBATIONARY PERIOD.

No distinction can be made between the rights of a probationary and a permanent safety member as set out in Government Code section 21022. That statute guarantees disability benefits to any "local safety member . . . regardless of age or *amount of service.*" (Italics added.) El Monte relies heavily, yet to no avail, upon *Duff* v. *City of Gardena* (1980) 108 Cal.App.3d 930 [167 Cal.Rptr. 4] in an attempt to distinguish the rights of probationary employees. In *Duff* a probationary employee was denied disability pension benefits. Duff was deemed to have no vested right to a disability pension. However, Duff's pension was not denied because he was a probationary employee, but rather because he did not file a disability claim until after his termination on other grounds. (See also *County of San Mateo* v. *Workers' Comp. Appeals Bd.* (1982) 133 Cal.App.3d 737 [184 Cal.Rptr. 240] [disability arose after termination of probationary employee].)

Indeed the *Duff* opinion actually supports the right of probationary police officers to disability pensions. As the court highlighted in that case: "Sections 21021 and 21022 set forth the conditions precedent to disability retirement for members of PERS *unqualified by distinctions between probationary and permanent employees.* While nonsafety members are required to have five years of state service to qualify, local safety members are entitled to disability retirement if at any time they are incapacitated as the result of industrial injury." (*Duff* v. *City of Gardena, supra,* 108 Cal.App.3d at p. 936.) (Italics added.) (See also Gov. Code, §§ 21021 and 21022.)

■ V. HAVING DETERMINED THELANDER WAS INCAPACITATED TO PERFORM THE DUTIES OF A POLICE OFFICER THE TRIAL COURT POSSESSED JURISDICTION TO ORDER THE BOARD TO GRANT THE PENSION REQUEST.

Thelander petitioned the superior court for relief under Code of Civil Procedure sections 1085 (traditional mandate) and 1094.5 (administrative mandate). It appears neither El Monte nor the PERS board conducted a hearing on the question of Officer Thelander's entitlement to a disability pension. Instead the denial was based solely on a review of the written file by an administrative officer to whom the El Monte City Council delegated this function. The trial court apparently granted its relief under section 1085.

■ Traditional mandamus is available when a local agency has clearly abused its discretion. It is a rule which has been referred to as "so well established as to be beyond question." (*Manjares* v. *Newton* (1966) 64 Cal.2d 365, 370 [49 Cal.Rptr. 805, 411 P.2d 901].) Indeed the principle was stated over 70 years ago in *Inglin* v. *Hoppin* (1909) 156 Cal. 483, 491 [105 P. 582]: "While, of course, it is the general rule that *mandamus* will not lie to control the discretion of a court or officer, meaning by that it will not lie to force the exercise of discretion in a particular manner . . . [it] will lie to correct abuses of discretion, and will lie to force a particular action by the inferior tribunal or officer, when the law clearly establishes the petitioner's right to such action." (Italics in original.) (See also *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851-852 [92 Cal.Rptr. 179, 479 P.2d 379]; *Walker* v. *County of Los Angeles* (1961) 55 Cal.2d 626, 639 [12 Cal.Rptr. 671, 361 P.2d 247]; *Fidelity Cas. Co. of New York* v. *Workers' Comp. Appeals Bd.* (1980) 103 Cal.App.3d 1001, 1009 [163 Cal.Rptr. 339].)

■ The court below upon weighing the evidence found the board had abused its discretion. Furthermore, it justifiably found under the undisputed facts that "the law clearly establishes" Thelander's right to a disability pension. Mandate ordering the board to grant the pension was therefore within the court's power under the authority granted in Code of Civil Procedure section 1085.

## VI. CONCLUSION

We hold the trial court acted properly in granting Officer Thelander's petition for administrative mandamus. ■ The purpose of retirement and disability pension programs is to provide a degree of economic security to the aged or disabled worker. The right of an individual to pension benefits has historically been liberally construed in favor of the pensioner and dependents. (*Jorgensen* v. *Cranston* (1962) 211 Cal.App.2d 292, 296 [27 Cal.Rptr. 297], *overruled on other grounds, Mass* v. *Board of Education* (1964) 61 Cal.2d 612, 627, fn. 9 [39 Cal.Rptr. 739, 394 P.2d 579].) The fact a disabling injury occurs while a police officer is in a probationary status does not destroy that protection. Nor does the fact the disabling injury happens during training rather than while chasing a suspect or rescuing a citizen. With no further discretion possible, the court was justified under Code of Civil Procedure section 1085 in ordering the retirement board to grant the pension request.

## DISPOSITION

The judgment is affirmed.

Schauer, P. J., and Paez, J.,* concurred.

The petition of appellant City of El Monte for a hearing by the Supreme Court was denied November 30, 1983.

---

*Assigned by the Chairperson of the Judicial Council.