[No. E029472. Fourth Dist., Div. Two. Jan. 8, 2002.]

JAMES PISCIONERI, Plaintiff and Respondent. v.
CITY OF ONTARIO et al., Defendants and Appellants.

COUNSEL

Filarsky & Watt and Steve A. Filarsky for Defendants and Appellants.

Lemaire, Faunce, Pingel & Singer, Edward L. Faunce and Larry J. Roberts for Plaintiff and Respondent.

OPINION

**HOLLENHORST, Acting P. J.**—The trial court granted a petition for writ of mandate which commands defendant City of Ontario (City) to immediately schedule a hearing on plaintiff's applications for a disability retirement. The City appeals.

FACTS

Mr. James Piscioneri was employed by the City as a firefighter from 1984 through 1987. On November 20, 1987, he filed an application for a disability retirement with the Public Employees' Retirement System (PERS). PERS then notified the City to make a disability determination within six months, as required by former Government Code section 21025.1 (now § 21157).[1]

On January 5, 1989, the city manager denied the application. The notice of determination states: "Although it has previously been determined medically and legally that Mr. Piscioneri has sustained a permanent disability as the result of his injuries on March 18, 1985 and May 22, 1985, constituting a psychiatric disability in the form of a slight phobia with respect to entering burning buildings, Mr. Piscioneri appears to be fully capable of performing the duties of Paramedic Coordinator which is a regular safety position in the Fire Department. Such position was offered to Mr. Piscioneri, without a reduction in his pay or other benefits in writing on August 17, 1988. At this time, having received no response from Mr. Piscioneri with respect to his acceptance or rejection of this offer of continued employment, I have determined that his failure to respond appropriately to the City's offer is tantamount to a rejection of the offer."

Mr. Piscioneri alleges that, on March 6, 1989, he appealed the notice of determination, and requested an administrative hearing on his application. He further alleges that he and the City agreed to continue the hearing

[1]Unless otherwise indicated, all further statutory references are to the Government Code.

until conclusion of his workers' compensation proceeding. The workers' compensation proceedings were allegedly completed on September 25, 1991. The City denies these allegations.

On June 14, 1992, Mr. Piscioneri filed a petition for writ of mandate which sought an order compelling the City to either give him a disability retirement or a modified duty assignment. In response, the City offered Mr. Piscioneri a firefighter job, and ordered him to report to work on December 1, 1992. He did so. On December 14, 1992, Mr. Piscioneri was examined by a psychiatrist who diagnosed posttraumatic stress disorder as a result of his two firefighting injuries. The psychiatrist found that Mr. Piscioneri was extremely angry at the City over the handling of his claim, and that he was not fit for duty because of his posttraumatic stress disorder. The psychiatrist recommended that Mr. Piscioneri be medically retired, and recommended that he be given therapy.

The City then placed Mr. Piscioneri in an off-work status, and it denied his further claim for a disability retirement on December 21, 1992. The denial was contained in a letter from the City's attorney. It stated that the City had discovered that Mr. Piscioneri had only taken a brief leave of absence from his employer in Washington state, and it called him a "total fraud [who] had no intention of returning permanently to work, and that his return to work on December 1, 1992 was for the sole purpose of orchestrating a stress claim." The letter denied that the City had sent Mr. Piscioneri for a psychiatric evaluation, and alleged that the psychiatrist had either been duped by Mr. Piscioneri or was a willing accomplice.

On January 11, 1993, the City agreed to reactivate the disability retirement proceeding, and it agreed to coordinate hearing dates with Mr. Piscioneri's counsel. On January 22, 1993, the City notified Mr. Piscioneri's counsel that a hearing was set for April 19-21. It also served a statement of issues and a request for discovery.

Mr. Piscioneri obtained new counsel at some time after February 5, 1993. On March 24, 1993, the City's counsel notified the previous attorney that it had not received a substitution of attorneys, Mr. Piscioneri was refusing to have his deposition taken, and there had been no response to the discovery request. The letter then states: "All of this leaves me no alternative but to cancel the scheduled disability retirement hearing." The City then sent a letter requesting that the hearing be taken off calendar "until such time as the parties agree to a mutually acceptable date."

Nothing further occurred until August 11, 1994. At that time, new counsel for Mr. Piscioneri requested a hearing. The City did not reset the hearing, and it alleges that the promised discovery was not provided to it.[2]

On February 27, 1997, Mr. Piscioneri's workers' compensation claim was resolved by compromise and release.

On March 5, 1999, Mr. Piscioneri's current counsel filed a second application for disability retirement. On March 17th, the City's counsel responded that the claim was untimely, and that it was denied. On April 13, 1999, the City's personnel services director confirmed the denial of the application and refused to submit the matter to hearing.

On August 20, 1999, the subject petition for writ of mandate was filed to compel the City to grant Mr. Piscioneri a hearing on his first application for a disability retirement and/or to file a statement of issues on the second application in order to initiate the hearing process on that application. (§ 11504.)

As noted above, the trial court granted the petition. It found that the second petition for writ of mandate is not time-barred. It concluded that the issues of an unwarranted delay in prosecuting the first claim and/or whether the second claim was filed in a timely manner are issues which should be first determined at the administrative hearing. Accordingly, it ordered that a hearing be immediately scheduled on both applications.

### The Timeliness of the Second Application: Section 21154

The City first contends that the second application for disability retirement, filed in March 1999, was untimely because it was not filed within the time prescribed by section 21154.

Section 21154 states: "The application shall be made only (a) while the member is in state service, or (b) while the member . . . is absent on military service, or (c) within four months after the discontinuance of the state service of the member, or while on an approved leave of absence, *or (d) while the member is physically or mentally incapacitated to perform duties from the date of discontinuance of state service to the time of application or motion.* On receipt of an application for disability retirement of a member,

---

[2]The City subsequently noted that Mr. Piscioneri's counsel was disbarred in 1998 for failure to perform services. Mr. Piscioneri's present attorney filed a declaration detailing his efforts to obtain a file from the previous attorney. His inability to do so apparently led to the decision to file a new application for disability retirement.

other than a local safety member with the exception of a school safety member, the board shall, or of its own motion it may, order a medical examination of a member who is otherwise eligible to retire for disability to determine whether the member is incapacitated for the performance of duty. On receipt of the application with respect to a local safety member other than a school safety member, the board shall request the governing body of the contracting agency employing the member to make the determination." (Italics added.) Disability is defined as "disability of permanent or extended and uncertain duration, as determined by the board, or in the case of a local safety member by the governing body of the contracting agency employing the member, on the basis of competent medical opinion." (§ 20026.)

The City contends that Mr. Piscioneri's second application was time-barred because it was not filed within four months of the discontinuance of service, as required by clause (c) of section 21154. Mr. Piscioneri relies on clause (d), contending that the trial court properly found that the issue should be initially resolved by the administrative hearing. The issue to be determined in that hearing is whether Mr. Piscioneri was incapacitated. (§§ 21154, 21156.) Thus, Mr. Piscioneri argues that it is premature to deny him the opportunity to show he factually comes within clause (d), i.e., the opportunity to show he has been physically or mentally incapacitated to perform duties from the date of discontinuance of service until the filing of the application.

The City argues that Mr. Piscioneri's interpretation of clause (d) nullifies clause (c). It discusses the legislative history of section 21154. However, its lengthy recitation of legislative history is unsupported by any citations to the record. Even if we considered the legislative material, it would not shed any light on the legislative intent.[3]

Mr. Piscioneri relies on the plain meaning rule, and we agree with him that resort to the legislative history of section 21154 is unnecessary. As our Supreme Court has said in a recent case: "As with any statutory construction inquiry, we must look first to the language of the statute. 'To determine legislative intent, a court begins with the words of the statute, because they generally provide the most reliable indicator of legislative intent.' [Citation.] If it is clear and unambiguous our inquiry ends. There is no need for judicial construction and a court may not indulge in it. [Citation.] 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' [Citation.]" (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th

---

[3]The City concludes its discussion of the legislative history by finding a "complete lack of legislative intent" regarding the meaning of section 21154.

1036, 1047 [80 Cal.Rptr.2d 828, 968 P.2d 539].) At a later point in the opinion, the court said: "Only when the language of a statute is susceptible to more than one reasonable construction is it appropriate to turn to extrinsic aids, including the legislative history of the measure, to ascertain its meaning. [Citation.]" (*Id.* at p. 1055; see also *Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063 [103 Cal.Rptr.2d 751, 16 P.3d 166]; *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 129 [96 Cal.Rptr.2d 485, 999 P.2d 718]; *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476-478 [66 Cal.Rptr.2d 319, 940 P.2d 906]; *People v. Gardeley* (1996) 14 Cal.4th 605, 621 [59 Cal.Rptr.2d 356, 927 P.2d 713].)

■ We find no ambiguity here. The Legislature has plainly stated four separate times, set off by commas, when an application for disability retirement may be filed: while the applicant is (1) working; (2) in military service; (3) filing within four months after termination of service; or (4) physically and mentally incapacitated. We find no conflict between these time periods, and find that they each independently state a time within which an application may be filed. "Such use of the word 'or' in a statute indicates an intention to use it disjunctively so as to designate alternative or separate categories. [Citations.]" (*White v. County of Sacramento* (1982) 31 Cal.3d 676, 680 [183 Cal.Rptr. 520, 646 P.2d 191].) "[T]he 'plain and commonsense' meaning of the statutory language controls. [Citation.]" (*N. T. Hill Inc. v. City of Fresno* (1999) 72 Cal.App.4th 977, 988 [85 Cal.Rptr.2d 562].)

Mr. Piscioneri relies on the fourth factor, physical and mental incapacity. ■ The City's interpretation would delete this factor from the statute, thus violating the general principle of statutory construction that requires us to "avoid if possible repeals by implication, give effect and significance to every word and phrase of a statute, and construe every statute in the context of the " ' "entire scheme of law of which it is a part so that the whole may be harmonized and retain effectiveness.' " ' [Citations.]" (*N. T. Hill Inc. v. City of Fresno, supra,* 72 Cal.App.4th 977, 990.)

■ In other words, we agree with Mr. Piscioneri that disability is often of uncertain duration. If the employee is able to prove that he or she has been continuously disabled from the date of discontinuance of state service to the time of the application for disability retirement, his application is timely under clause (d) of section 21154. If the employee is not able to prove continuous disability, he or she must file within four months of leaving service, or while on an approved leave of absence under clause (c).

The City argues that, even if clause (d) is applicable, Mr. Piscioneri failed to produce any evidence that he was incapacitated within the meaning of the

section. But we agree with the trial court that the question of incapacity is a factual question to be determined at the administrative hearing. It would be premature to decide it as a legal issue before a hearing was held. In other words, the administrative tribunal should initially decide whether the application was timely by making a finding, based on the evidence before it, as to whether the application was made while applicant was physically or mentally incapacitated to perform firefighter duties.

Second, we note that the record does contain evidence of incapacity, consisting of the psychiatrist's 1992 report which finds posttraumatic stress disorder and concludes that Mr. Piscioneri was not fit for duty as a firefighter. The report recommends a medical retirement and further therapy. This evidence of disability is not contradicted, limited, or ended by later medical evidence in the current record. Thus, even if evidence of incapacity was necessary at this stage of the proceedings, it has been provided by a document which was not subsequently contradicted by later medical evidence.

We therefore agree with Mr. Piscioneri that the trial court did not misinterpret section 21154.[4]

### THE TRIAL COURT'S REJECTION OF LACHES

The City next contends that the delay in filing the second application for disability retirement, and the further delays in filing the petition for writ of mandate, amount to laches which bars any further relief.

The trial court only considered whether there was undue delay in filing and bringing the writ to hearing. It succinctly stated its conclusion on this issue: "Clearly there existed a substantial delay relative to the first disability claim and the filing of the present Petition. Given the Respondent's role in the delay, the fact that at issue is a vested due process right to a hearing, and that it is the duty of the Respondent to set such hearing, I do not believe that I can find an inexcusable delay which was acquiesced to by the Petitioner."

With regard to the second application for disability retirement, the trial court said only: "As it relates to the second application, I do not see an argument relative to the issue of Laches and the filing of the present petition."

---

[4]As Mr. Piscioneri notes, our Supreme Court has recently applied the principle that provisions in the Public Employees' Retirement Law must be liberally construed in favor of pensioners if they are ambiguous or uncertain. (*Pearl v. Workers' Comp. Appeals Bd.* (2001) 26 Cal.4th 189, 197 [109 Cal.Rptr.2d 308, 26 P.3d 1044], citing *City of Sacramento v. Public Employees Retirement System* (1991) 229 Cal.App.3d 1470, 1488 [280 Cal.Rptr. 847].)

■ We agree with Mr. Piscioneri that the factual basis for a laches determination must first be developed by the City at the administrative hearing. As this court has recently observed, "The question of whether a litigant is guilty of laches is a question of fact for the trial court." (*In re Marriage of Dancy* (2000) 82 Cal.App.4th 1142, 1159 [98 Cal.Rptr.2d 775].)

■ In an earlier case, we described laches as follows: "Generally, the existence of laches is a question of fact to be determined by the trial court in light of all the applicable circumstances, and in the absence of a palpable abuse of discretion, the trial court's finding of laches will not be disturbed on appeal. [Citation.] [¶] The defense of laches is derived from the maxim that '[t]he law helps the vigilant, before those who sleep on their rights.' (Civ. Code, § 3527.) This has been restated as '[e]quity frowns upon stale demands [and] declines to aid those who have slept on their rights.' [Citation.] [¶] In practice, laches is defined as an unreasonable delay in asserting an equitable right, causing prejudice to an adverse party such as to render the granting of relief to the other party inequitable. [Citation.] Thus, if a trial court finds (1) unreasonable delay; and (2) prejudice, and if its findings are not palpable abuses of discretion, a finding of laches will be upheld on appeal." (*In re Marriage of Plescia* (1997) 59 Cal.App.4th 252, 256 [69 Cal.Rptr.2d 120].)

In this case, the trial court found that the City had not demonstrated prejudice from the admitted delay.[5] We find no basis for concluding that the trial court's decision was a palpable abuse of discretion.

The City relies on *Duff v. City of Gardena* (1980) 108 Cal.App.3d 930 [167 Cal.Rptr. 4]. In that case, a firefighter sought a writ of mandamus to compel the City to make "a determination that he suffered from an employment-related mental or emotional condition at the time of his discharge which would qualify him for disability retirement benefits." (*Id.* at p. 933.) The trial court denied the writ and the firefighter appealed.

Mr. Duff was employed as a firefighter for a one-year probationary period. He was terminated at the end of the probationary period for inability to meet the standards expected of firefighters. (*Duff v. City of Gardena, supra,* 108 Cal.App.3d 930, 933.) He then filed a workers' compensation claim, alleging a psychiatric-emotional injury. He received temporary total disability benefits for a year. After those benefits ended, he filed an

---

[5]We note that, in the preceding section, we have agreed with Mr. Piscioneri's reading of the statute. Under section 21154, clause (d), he could file the application at any time while he was incapacitated. Thus, his filing was timely if the factual determination of incapacity is made at the appeal hearing.

application for disability retirement. (*Id.* at p. 934.) The City refused to make a favorable determination on the request for a disability retirement, contending that Mr. Duff was terminated as a probationary employee who was not otherwise eligible for retirement. (*Id.* at p. 935.) Mr. Duff then filed a writ petition, which was denied.

The appellate court first noted that mandamus would be proper to compel performance of a ministerial duty if a "clear, present and beneficial right in the petitioner to the performance of that duty" had been established. (*Duff v. City of Gardena, supra,* 108 Cal.App.3d 930, 935.) Mr. Duff sought a hearing by the City on his application in order to "introduce medical evidence that he failed to meet the standards of his employment during the probationary period due to such disability and that the city therefore was not entitled to terminate him for cause. [Citation.]" (*Id.* at pp. 936-937, fn. omitted.)

The appellate court held that, because Mr. Duff was terminated for cause during the probationary period, he had no vested rights to be qualified for a PERS disability retirement. (*Duff v. City of Gardena, supra,* 108 Cal.App.3d 930, 937.) It also found that the City had made the required determination by declaring that he was not terminated for incapacity. (*Id.* at p. 937.)

In addition, the appellate court held that "the record does support the trial court's determination that Duff is precluded by laches from pursuing his alleged claim to disability retirement." (*Duff v. City of Gardena, supra,* 108 Cal.App.3d 930, 938.) The court found that the two-year delay in pursuing the claim was "patently prejudicial" and it therefore held that the trial court did not abuse its discretion in denying the writ: "It is clear that public policy would be violated in the instant case should the court order the city to make a determination favorable to Duff on the issue of whether he was discharged for inability to perform his duties as a result of industrial accident. Such an order might have the adverse effect of giving an employee who served a probationary period of slightly over one year lifetime disability benefits of one-half his salary where there is no indication whatsoever that he even reported a work-related injury." (*Id.* at p. 938.) Accordingly, the court upheld the trial court's refusal to grant a writ of mandate.

Although the *Duff* case is superficially similar to this case, there are some significant differences. First, Mr. Duff sought a writ to force the City to issue a determination favorable to him. Since it is improper to use mandamus to control the exercise of discretion, the writ should have been denied on that ground alone. (*People ex rel. Younger v. County of El Dorado* (1971) 5 Cal.3d 480, 491 [96 Cal.Rptr. 553, 487 P.2d 1193].)

Second, the writ sought to have the City make a determination on his application. Here, the City has made an unfavorable determination, and the writ only seeks to compel the City to participate in the appeal process to which the firefighter is entitled under section 21156.

Third, since no appeal hearing was at issue in *Duff*, there was no reason to defer a decision on laches until the facts were established at that hearing. The court therefore decided the issue on the basis of the trial court's factual determinations. (*Duff v. City of Gardena, supra,* 108 Cal.App.3d 930, 936.)

In essence, the City contends that we should find laches despite the trial court's failure to do so. It finds support for its position in our Supreme Court's recent case of *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61 [99 Cal.Rptr.2d 316, 5 P.3d 874]. Among other issues presented in that case, the court held that "a trial court's summary judgment based on the defense of laches must be reviewed de novo." (*Id.* at p. 65.) It stated the applicable general principle: "[A] trial court's laches ruling will be sustained on appeal if there is substantial evidence to support the ruling. [Citation.] . . . [¶] . . . 'The defense of laches requires unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay.' [Citation.] Review of a personnel decision of a public agency must be sought promptly. [Citation.] As relevant here, the period of delay to be considered includes the time both before and after the filing of the petition for administrative mandate. [Citations.] Here, that delay exceeds three years." (*Id.* at pp. 67-68.) The court specifically noted that "[a] discharged employee's unreasonable delay in seeking judicial review of the discharge may prejudice the employer . . . ." (*Id.* at p. 69.) The court therefore held that "given the unreasonable delay in question, the doctrine of laches bars plaintiff's petition for writ of administrative mandate brought in superior court. Accordingly, plaintiff cannot now challenge the City's ad- ministrative finding that he was laid off for economic, not discriminatory, reasons." (*Ibid.*)

The *Johnson* case supports the City's position that the delay here consti- tuted laches. Almost 12 years elapsed between the filing of the first appli- cation for disability retirement in 1987 and the filing of the second petition for writ of mandate in 1999. After the second petition for writ of mandate was filed in 1999, a motion to grant the writ was not filed until August 17, 2000. The hearing was held on January 19, 2001, and the decision was not issued until March 6, 2001.

In effect, the City argues that these are excessive delays which constitute laches regardless of the reasons for the delays. But the trial court did not so

find. Instead, it found that the City was not prejudiced by the delay, and was partially responsible for it.

*Johnson* held that the appellate court erred in reviewing the issue under a deferential abuse of discretion standard because summary judgment decisions are reviewed de novo. (*Johnson v. City of Loma Linda, supra,* 24 Cal.4th 61, 65-66.) The City would apparently have us make a de novo determination of laches here.

The City's argument is somewhat appealing. The extreme delay here could easily support an ultimate finding of laches. Nevertheless, we decline the City's invitation because it is putting the cart before the horse.[6] The trial court did not conduct an evidentiary hearing, and we agree with the trial court's implied finding that the factual underpinnings of the laches claim should initially be considered at an administrative hearing. In other words, the administrative remedy should be exhausted first: "Exhaustion of *administrative* remedies is 'a jurisdictional prerequisite to resort to the courts.' [Citation.]" (*Johnson v. City of Loma Linda, supra,* 24 Cal.4th 61, 70.) The hearing officer will therefore make the initial factual determinations on the disability and laches issues. The legal and equitable issues, based on the facts as determined by the hearing officer, can then be considered by the court, if necessary.

The following are some of the factual and legal issues relevant to an eventual determination of laches. First, as noted above, there may not have been an untimely delay in filing the application if the applicant remained disabled. (§ 21154, cl. (d).) The proof of disability will be the major issue at the hearing.

Second, there may have been no prejudice. The trial court found that the City had not demonstrated prejudice. We agree with that finding regardless of whether we conduct a de novo review or an abuse of discretion review. Since there was no evidence of prejudice, a finding of laches is premature. The principle that prejudice must be proven does not mean that the defense is not a good one. It merely means that the facts regarding the delay, including the question of prejudice, are undeveloped, and they should be explored at the administrative hearing. At that hearing, the burden will be on the City to prove the facts supporting the defense. (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 204 [96 Cal.Rptr.2d 463, 999 P.2d 686].)

■ We also agree with Mr. Piscioneri that prejudice should not be presumed solely because of the fact of delay: "[U]nreasonable delay by the

---

[6]A similar argument was rejected in *Pittsburg Unified School Dist. v. Commission on Professional Competence* (1983) 146 Cal.App.3d 964, 980, footnote 4 [194 Cal.Rptr. 672].

plaintiff is not sufficient to establish laches. There must *also* be prejudice to the defendant resulting from the delay or acquiescence by the plaintiff. Prejudice is not presumed, it must be affirmatively demonstrated. [Citations.]" (*Ragan v. City of Hawthorne* (1989) 212 Cal.App.3d 1361, 1368 [261 Cal.Rptr. 219], fn. omitted.) "Prejudice is never presumed; rather it must be affirmatively demonstrated by the defendant in order to sustain his burdens of proof and the production of evidence on the issue. [Citation.]" (*Miller v. Eisenhower Medical Center* (1980) 27 Cal.3d 614, 624 [166 Cal.Rptr. 826, 614 P.2d 258].)

Third, the time to file a disability retirement application may have been tolled while the workers' compensation proceeding was pending. (*Collier v. City of Pasadena* (1983) 142 Cal.App.3d 917 [191 Cal.Rptr. 681] [Filing a workers' compensation claim equitably tolls a statute of limitation for filing a disability pension claim arising out of the same disabling injury.].) The facts concerning this issue may be developed at the administrative hearing.

Fourth, the trial court found that the City bore some responsibility for the delay. For example, it failed to schedule a hearing despite the request made by Mr. Piscioneri's counsel on August 11, 1994. The factual extent of the City's responsibility for the delay must be determined at the administrative hearing before the defense of laches can properly be sustained.

Fifth, the City had a duty to hold a hearing. As the trial court noted, the question of delay "must be viewed in conjunction with the vested due process rights of the Petitioner to an Administrative Hearing, and the duty on the Respondent to set such Hearing." Mr. Piscioneri, as a public safety PERS member, "had a fundamental vested right to disability retirement benefits if, in fact, he was disabled. The city's decision on that threshold question substantially affects that right. Therefore, a hearing is contemplated, indeed required, by the Administrative Procedure Act [citation]. . . . [The city] must therefore hold an evidentiary hearing to determine whether [the public safety officer] is capable of performing his duties." (*Watkins v. City of Santa Ana* (1987) 189 Cal.App.3d 393, 396-397 [234 Cal.Rptr. 406]; see also *Ostlund v. Bobb* (9th Cir. 1987) 825 F.2d 1371, 1373.)

In other words, in the normal course of events, the disability retirement application would be filed with PERS, it would be referred to the City for a disability determination, the determination would be made within six months (§ 21157), and the local safety member would have the right to appeal an adverse decision in accordance with the Administrative Procedure Act (§ 11500 et seq.). (§ 21156.) The filing of a writ only became necessary because the City refused to follow this procedure. There is also an issue as to

whether the City was entitled to cancel the administrative hearing that had been set in April 1993 for alleged discovery violations.

We therefore conclude that the trial court properly deferred the "timing issues" because it found that they should be first resolved by the administrative tribunal. The City has not shown any abuse of discretion by the trial court in its decision to require an administrative hearing first.

## THE DOCTRINES OF PRIMARY JURISDICTION AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

The City disagrees with such a deferral. It contends that the trial court erred in deciding that exhaustion of the administrative process is required. Instead, it contends that both the trial court and the administrative process had the jurisdictional ability to determine the issues of failure to follow statutory requirements, laches, and preclusion of a disability retirement. It invokes the doctrine of primary jurisdiction to support its contention that the trial court erred in deferring these issues to the administrative hearing.

The City relies on our Supreme Court's discussion of the issue in *Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377 [6 Cal.Rptr.2d 487, 826 P.2d 730]. In that case, the People filed suit against various insurance companies under the Unfair Practices Act (Bus. & Prof. Code, § 17000 et seq.). Our Supreme Court considered the issue of whether the judicial action should be stayed under the primary jurisdiction doctrine, pending administrative action by the Commissioner of the Department of Insurance. (*Farmers Ins. Exchange,* at p. 381.) The court said: "We conclude that in the absence of legislation clearly addressing whether a court may exercise discretion under the primary jurisdiction doctrine, a court may exercise such discretion and may decline to hear a suit until the administrative process has been invoked and completed. We hold that prior resort to the administrative process is required in the circumstances of this case and that the trial court abused its discretion in concluding otherwise." (*Ibid.*)

Although this conclusion supports Mr. Piscioneri's position, the City relies on the general principles stated by the court: "As suggested above and explained below, the applicable principle in this case is the primary jurisdiction doctrine, not the exhaustion doctrine. [¶] Petitioners' mischaracterization is understandable because courts have often confused the two closely related concepts [citation]. 'Both are essentially doctrines of comity between courts and agencies. They are two sides of the timing coin: Each determines whether an action may be brought in a court or whether an agency proceeding, or further agency proceeding, is necessary.' [Citation.] [¶] ▮ In

[*United States v. Western Pac. R. Co.* (1956)] 352 U.S. 59 [77 S.Ct. 161, 1 L.Ed.2d 126], the high court explained: ' *"Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone*; judicial interference is withheld until the administrative process has run its course. *"Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts*, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.' [Citations.]" (*Farmers Ins. Exchange v. Superior Court, supra,* 2 Cal.4th 377, 390-391, original italics.) "No rigid formula exists for applying the primary jurisdiction doctrine [citation]. Instead, resolution generally hinges on a court's determination of the extent to which the policies noted above are implicated in a given case. [Citations.] This discretionary approach leaves courts with considerable flexibility to avoid application of the doctrine in appropriate situations, as required by the interests of justice." (*Id.* at pp. 391-392, fns. omitted.).

The City also quotes the court's ultimate conclusion: "If the Legislature establishes a scheme under which a court is prohibited from exercising discretion under the doctrine of primary jurisdiction, a court must honor the legislative scheme, and may not decline to adjudicate a suit on the basis that available administrative processes should first be invoked and completed. If, however, the Legislature does not preclude a court from exercising its discretion under the primary jurisdiction doctrine, a court may do so and, in appropriate cases, may decline to adjudicate a suit until the administrative process has been invoked and completed." (*Farmers Ins. Exchange v. Superior Court, supra,* 2 Cal.4th 377, 394.)

The City's reliance on *Farmers* is misplaced. As the last quote indicates, the trial court did not abuse its discretion in deciding that the administrative process should be completed before deciding the laches issues. This decision was appropriate because, as noted above, the laches defense is heavily dependent on factual issues, and no factual hearing has yet been held. In addition, under the statutory scheme, Mr. Piscioneri has a right to an administrative hearing under the provisions of the Administrative Procedure Act (§ 11500 et seq.). (§ 21156.) By filing his petition for writ of mandate, he is only seeking to enforce his right to an administrative hearing. Thus, his remedy is the administrative hearing, and his failure to exhaust that remedy would prevent him from seeking judicial relief. (See, e.g., *Civil Service Assn. v. City and County of San Francisco* (1978) 22 Cal.3d 552, 565 [150 Cal.Rptr. 129, 586 P.2d 162].) As *Farmers* states, the primary jurisdiction doctrine creates a timing issue, not a jurisdictional issue. (*Farmers Ins.*

*Exchange v. Superior Court, supra,* 2 Cal.4th 377.) The trial court did not abuse its discretion in its resolution of the timing issues, i.e., by concluding that the factual issues should be determined before the court ruled on the City's equitable defenses.

## UNCLEAN HANDS DEFENSE

The City also contends that the trial court erred in failing to address its argument that Mr. Piscioneri's petition was barred by the unclean hands doctrine. Specifically, it argues that his failure to respond to its discovery request in 1993, his abandonment of his earlier retirement application, and his undue delay in filing his March 1999 request for an administrative hearing constituted unclean hands.

In response, Mr. Piscioneri notes that the City had an available remedy for the alleged discovery violation consisting of an enforcement motion under section 11507.7, and the City simply failed to file such a motion. With regard to the abandonment issue, Mr. Piscioneri argues that he never abandoned his claim, although he was ill-served by his former counsel. He also characterizes the delay issue as merely a recasting of the laches argument in another guise.

Unclean hands, like laches, is an equitable defense. (*Blain v. Doctor's Co.* (1990) 222 Cal.App.3d 1048, 1059 [272 Cal.Rptr. 250].) It is a way of describing the plaintiff's fault, and it is thus heavily fact dependent. We therefore conclude that the trial court did not err in failing to uphold such a defense at this time. Instead it properly concluded, at least by implication, that the facts underlying the affirmative defenses of laches and unclean hands should first be factually developed at the administrative hearing. We find no error, and agree with the trial court that the administrative process should run its course.

## CONCLUSION

Section 21156 provides that the local safety member may appeal the City's determination that he or she is not incapacitated. It further provides that the appeal hearing shall be held in accordance with the Administrative Procedure Act (§ 11500 et seq.). The writ of mandate only sought an order requiring that an appeal hearing be held on the City's denial of Mr. Piscioneri's applications for disability retirement. The trial court only ordered that such a hearing be held.

We agree with Mr. Piscioneri that the administrative remedy should be exhausted before the legal and equitable defenses raised by the City are

decided. As Mr. Piscioneri's counsel puts it: "The firefighter may or may not be entitled to his disability retirement—but he is entitled to a hearing."

### DISPOSITION

The judgment is affirmed.

McKinster, J., and Ward, J., concurred.